BRAGGS QUARRY *v.* WILL SMITH.

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930 and January 19, 1931.

P. H. Thach, for plaintiff in error.

F. G. Redwine and Allison, Lynch & Phillips, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

Will Smith, while working at a quarry owned and operated by John W. Bragg, received an injury resulting in the loss of both eyes. He instituted suit under the Workmen's Compensation Act.

The trial court found that petitioner's average weekly wages were $22.50, and decreed a recovery in his favor in the sum of $11.25 per week for a period of four hundred weeks and the further sum of $5 per week for an additional period of one hundred and fifty weeks.

The defenses now relied upon are, in the main, of a technical nature. It is said that it is not averred in the petition that the parties were operating under the Compensation Act, or that there were as many as five men regularly employed. On the other hand, no claim is made in the answer that the parties were not operating under the act, or that the employer is not using as many as five men in operating its plant. The petitioner stated that he had been working at this plant for seven years, and then testified:

"Q. How many men were working there at the time you got hurt? A. There was seven of us.

"Q. How many men had worked there about that time? A. Just seven."

We discussed at some length the question of pleadings in this character of case in *Hartwell Motor Co.* v. *Hickerson,* 160 Tenn., 525, and it is unnecessary to repeat here what was said in that case. The employer was sued under the Compensation Act. If, in fact, he was not operating under the act, it was his privilege to make that an issue.

What was said in the case just referred to as to notice applies here. The employer knew all about the accident, sent petitioner to the hospital, employed physicians to

administer to him, paid their bills and the hospital bill, and paid him compensation aggregating $450.

The contention that petitioner was an independent contractor is answered by the opinion of this court in *Mayberry* v. *Chemical Co.*, 160 Tenn., 459.

The most difficult question in the case is the amount of compensation petitioner is entitled to recover.

Petitioner is an ignorant negro and kept no account of wages received. He was employed in loading rock at so much per car. The work was out of doors, and during rainy or very cold weather he did not work, and necessarily worked less during the winter months than at other seasons of the year. While he had been working for defendant for several years, he testified that he worked when it suited him, had no regular hour to begin work in the morning or to quit in the evening.

It appears that during the year preceding the accident petitioner worked on an average of less than three days per week, and his average wages during this period were $12.50 per week. There were only four weeks during this year that petitioner worked the full six days. His average earnings for these four weeks were $22.50. Counsel for petitioner contend that the statute must be literally construed, and the average wages received for the weeks in which petitioner put in full time made the basis of computation. This was the view entertained by the trial court. In so holding the trial court committed error. The portion of the statute involved provides as follows:

" 'Average weekly wages' shall mean the earnings of the injured employe in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury divided by fifty-two; but if the injured employe

lost more than seven days during such period when he did not work, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.''

This provision clearly contemplates one regularly employed for a "normal week" as distinguished from "periodical employment." Where one regularly employed earns a given sum for a normal week it would be inequitable, in computing his compensation in case of accident, to include those weeks when, on account of illness or because the plant was shut down for repairs, his earnings were reduced. Likewise, it would be unjust to the employer to require him to pay one who only works three days a week the wages received by one who works six days a week engaged in similar work.

In *White* v. *The Pinkerton Co.*, 155 Tenn., 233, this court said:

"After a careful consideration of the statute we have concluded that the object of the act was to compensate a disabled employee, to the extent of fifty per cent of the wages he had been receiving, for a given number of weeks."

While it seems that the act does not expressly provide for computing compensation of one periodically employed, as was said by the Supreme Court of Massachusetts, quoted in the White case, "it does not follow that the employee shall go without remuneration, but that the 'average weekly wages' actually earned by her during the time she was actually employed shall be the basis of compensation."

If the work is discontinuous, that is an element which cannot be overlooked. *Anslow* v. *Cannock Chase Colliery Co.*, 78 L. J. K. B., 679.

Applying the rule announced herein to the facts, we find that the average weekly wages of the petitioner were $12.50 instead of $22.50, and the decree of the trial court will be modified accordingly. Petitioner will pay one-third of the cost of the appeal, and all other costs will be paid by the defendant.

## ON PETITION TO REHEAR.

By a petition filed in this case we have been requested to state more clearly and specifically the method of computing compensation under the statute, which we shall attempt to do. The decisions of the court upon this question would likely have been better understood had the opinions contained fuller statements of the facts. The statute is indefinite and does not purport to cover every situation that may arise.

The underlying principle of our compensation law is thus stated in *White* v. *The Pinkerton Co.*, 155 Tenn., 233, to-wit:

"After a careful consideration of the statute we have concluded that the object of the act was to compensate a disabled employee, to the extent of fifty per cent of the wages he had been receiving, for a given number of weeks.

"Where the court can see that the application of this rule would be unfair, and evidence has been introduced that would justify us in applying some other rule, we would not hesitate to do so.

"*(3)* The court must ascertain the average weekly wages of the petitioner by past earnings, and not by what he may earn in the future."

In the opinion in that case, after quoting subsection (c) of section 2, the court said:

"The foregoing subsection provides three methods for ascertaining average weekly wages:

"1. Where the employee has been working for the employer for as much as a year, prior to the injury, divide the total wages received by fifty-two.

"2. Where the employment, prior to the injury, was less than fifty-two weeks, divide the total wages received by number of weeks employed; 'Provided, results just and fair to both parties will thereby be obtained.'

"3. Where the employment has been of such short duration that it is impracticable to compute the wages by either of the above methods, then regard shall be had to the average wages received by a person in the 'same grade,' employed at the same work by the same employer, 'and if there is no such person so employed, by a person in the same grade employed in the same class of employment in the same district.'

"The first method has no application in this case because the petitioner was only in the employ of the defendant ten weeks.

"The third rule is not a proper measure because there is no evidence as to the wages received by a person in the 'same grade.'"

The court applied rule two in that case, which it conceived to be just and fair to both parties; that is, it divided the total wages received ($28.50) by the number of weeks covering the employment (10), and held the average weekly wages to be $2.85. That was the only matter of contest in the case. The facts were that White received an injury to his right wrist, resulting in eight weeks total disability, and permanent partial disability to his right hand to the extent of twenty-four per cent. For the total disability he was entitled to receive fifty

per cent of his average weekly wages, and for his permanent partial disability he was entitled to receive twenty-four per cent of his average weekly wages for one hundred fifty weeks, less the period (8 weeks) covering total disability. It was agreed that he was entitled to $100 for medical expenses. The recovery awarded petitioner was as follows:

| | |
|---|---|
| 8 weeks at $2.85 | $ 22.80 |
| 142 weeks at 24% of $2.85 | 97.13 |
| Medical expenses | 100.00 |
| | |
| Total | $219.93 |

In *Mayberry* v. *Chemical Co.*, 160 Tenn., 459, we applied the same rule. In that case the employment covered eighteen weeks and the total wages received were $81.25, thus making the average weekly wages $4.51. We excluded the weeks in which no work was performed.

■ In each of the foregoing cases the employment was for less than a year, and we endeavored to compensate the employees to the extent of fifty per cent of the wages they had been receiving. We are unable to formulate a rule whereby compensation, in this class of cases, can be computed with mathematical certainty. In the two above cases the employment was unusual, periodical, and not continuous; and it is only in these exceptional cases that the computation of wages becomes complicated. But when the principles announced herein are applied to the cases as they arise, they can be disposed of without difficulty.

In the instant case the employment covered a period of several years, but the employe did not work regularly and continuously. The court held that the first rule announced in *White* v. *The Pinkerton Company* did not

apply, because that provision had in contemplation one regularly employed for a normal week, and that the statute did not specifically cover a case like the one under consideration. The court found that the average weekly wages received by the employe for the fifty-two weeks preceding the accident were $12.50 instead of $22.50, as found by the trial court. That was the only matter in controversy. The court, in principle, applied the second rule, viz., fifty per cent of the wages the employe had been receiving for a given number of weeks. That finding was based upon the testimony of Mr. Bragg, to the effect that the average weekly wages of petitioner for the preceding year were $12 or $13. We adopted the average of these two sums. It is only when the employment has been regular and continuous for a year or longer that the first rule, referred to above, is to be applied. That is not this case.