NEW JELLICO COAL CO. *v.* KENNER.

(*Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

CLARENCE TEMPLETON, of Jellico, and LINDSAY, YOUNG and ATKINS, of Knoxville, for plaintiff in error.

POPE & OGLE, of Knoxville, for defendant in error.

MR. JUSTICE DeHAVEN delivered the opinion of the Court.

This is a compensation case. The facts are stipulated. The only question for determination is the average weekly wages of petitioner. Petitioner had been in the regular employment of defendant, working in its mines, for more than 1 year prior to the accident in which he received his injury. For the period of 52 weeks preceding the date of his injury he earned, by regular employment, the total sum of $882.67. During the period the mines were shut down by a strike of the employee miners for 8 weeks, and for a further period of 2 weeks, on account of what is known as a mine creep.

Petitioner insists that his average weekly wages should be determined by first deducting the 10 weeks, during which he did not work, from 52 weeks, and then dividing his earnings of $882.67 by 42 weeks. On the other hand, defendant insists that petitioner's earnings of $882.67 should be divided by 52 weeks.

The trial judge adopted petitioner's theory and deducted the 10 weeks. From a decree awarding compensation on this basis, defendant has appealed to this court.

Subsection (c) of section 6852 of the Code (Workmen's Compensation Law), in the parts thereof material to the issue here involved, is as follows:

" 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period

of fifty-two weeks immediately preceding the date of the injury divided by fifty-two; but if the injured employee lost more than seven days during such period when he did not work, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.''

In *Braggs Quarry* v. *Smith*, 161 Tenn., 682, 33 S. W. (2d), 87, 88, 34 S. W. (2d), 714, the petitioner was employed in loading rock at so much per car, and, while his working time was subject in part to outdoor weather conditions, it appeared that he worked only ''when it suited him.'' In the year preceding the accident petitioner worked on an average of less than 3 days per week, and his average wages during the period were $12.50 per week. There were only 4 weeks during the year that petitioner worked the full 6 days. His average earnings for the 4 weeks were $22.50 per week. It was insisted that the average wages received for the weeks in which petitioner put in full time were the basis of computation. This court held the average weekly wages received by the petitioner were $12.50 per week instead of $22.50, as found by the trial judge. The court said, *inter alia*:

''Where one regularly employed earns a given sum for a normal week, it would be inequitable, in computing his compensation in case of accident, to include those weeks when, on account of illness or because the plant was shut down for repairs, his earnings were reduced. Likewise, it would be unjust to the employer to require him to pay one who only works three days a week the wages received by one who works six days a week engaged in similar work.''

Petitioner in the instant case did not work for 8 weeks during the preceding 52 weeks because of a strike of the employee miners. This period of 8 weeks was not lost to petitioner by reason of sickness, or the closing of the mines for repair, or such like. The closing down was caused by the employee miners of defendant.

In *Carter* v. *Victor Chemical Works,* 171 Tenn., 141, 101 S. W. (2d), 462, 463, the court referred to *Wilmoth* v. *Phoenix Utility Co.,* 168 Tenn., 95, 75 S. W. (2d), 48, relied on by the petitioner (as it is in the case at bar), and said:

"The distinction, given determinative recognition in the Wilmoth Case, was that between loss of time occasioned by chance or accident, such as temporary disability of the employee; and, for example, a temporary breakdown in machinery, or temporary and occasional interruptions or suspensions of operations because of bad weather, inadequate shipping facilities, or limitations on demand for the products. Workers regularly employed in manufacturing, mining, or outdoor construction habitually lose time occasionally in the due course of their employment because of such incidental happenings as suggested. These are conditions of such employment, to be expected to arise, and the average earnings of the worker are commonly and naturally affected thereby. His average earnings are necessarily subject thereto."

██ ██ The purpose of the Compensation Act (Code 1932, section 6851 et seq.) is to compensate the employee or his dependents by paying 50 per cent. of the amount such employee was able to earn during the 52 weeks (if he worked so long) before the injury. Applying this rule, the employee, of course, is not able to earn

anything in his employment during a strike. Yet it constitutes, as in this case, a part of the 52 weeks over which his employment extends. Strikes are of common occurrence in the industrial world. If time lost due to lack of orders, lack of cars, slack season, and such, are not to be deducted from the 52 weeks, neither should loss of time due to a strike be deducted. A strike is as much of an incident to the coal mining business as the other illustrations stated above.

With reference to the 2 weeks lost by a "mine creep," which is shown to be an underground condition and occurrence beyond the control of either the coal miners or the operators, we think undoubtedly that this time should not be deducted from the 52 weeks. This is a condition incident to the coal mining business and one which occasionally would cause a miner to lose time.

In our view the total earnings of petitioner for the preceding 52 weeks must be divided by 52 in ascertaining his average weekly wages. On this basis petitioner's average weekly wages were $16.98, and 50 per cent. of this is $8.49. The judgment of the trial court will be so modified. The cause is remanded for such further proceedings as may be necessary.

The costs of this court will be paid by defendant.