A. G. S. Railroad Company *v.* Wright.

(*Knoxville*, September Term, 1939.)

Opinion filed November 25, 1939.

LYNCH, PHILLIPS, HALL & ALLISON, of Chattanooga, for plaintiff in error.

SIZER, CHAMBLISS & KEFAUVER, of Chattanooga, and KENNERLY & KEY, of Knoxville, for defendant in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a compensation case. The only issue presented on this appeal is the amount of compensation due petitioner, Mrs. Martha E. Wright, for the benefit of herself and minor daughter, under the Workmen's Compensation Act, Code 1932, section 6851 et seq., for the death of her husband.

The material facts are that petitioner's husband, B. L. Wright, while working as switchman for the defendant railroad company, in an intrastate operation, was instantly killed at about noon on March 2, 1937. At the time of his death, deceased had worked for defendant one and one half days only, during the year next before his death. The days that he worked were successive and in the same week. His wages were $6.62 per day for a six day week, under the contract of employment under which he was working at the time of his death.

The trial judge made the following findings, incorporated in the final decree:

"There is no rule authorized by statute under which the Court may arbitrarily fix the average weekly wages of a disabled or deceased employee and use it as a basis for compensation. There must be evidence of wages paid within the preceding 52 weeks or a contract of employment at fixed wages at the time of injury or death; and compensation must be based on such proof. In the instant case the deceased had not received any wages from the defendant during the year prior to his accidental death. For that reason any attempt to fix his average weekly wages could be nothing more than an unauthorized arbitrary motion of the court. Hence, the only sound basis upon which compensation may be predicated is the contract of employment under which he was working when he met his death. His wages were $6.62 per day for a six day week. Compensation will be allowed on that basis including the statutory funeral allowance. The minor daughter will share in the statutory allowance of forty per cent from March 2, 1937, to her 18th birthday, August 28, 1938. Thereafter the widow will recover the thirty per cent fixed by the statute until full compensation has been paid."

Judgment was entered in accordance with the findings of the court, and interest was allowed upon the judgment at the rate of six per cent from the date of the entry of same of record.

Defendant has appealed to this court from the judgment of the trial court and has assigned errors. Petitioner has filed the record for a writ of error and has assigned errors.

It appears from the record that deceased belonged to the Railroad Brotherhood which had contracts with both the defendant and the Southern Railroad Company, these contracts being in substance the same. The effect and

operation of these contracts were that all switchmen working for either of these railroads had their names placed on one seniority list, and were entitled to work when needed by either of these railroads in the order they stood on the list; that deceased's name was the next to the last name on the list; that for the year next before his death, deceased had worked for the defendant one and one-half days, and earned $10.07; that during the same year he had earned from work for Southern Railroad Company, the sum of $93.09, making a total of wage received from both railroads a total of $103.16. The contract of employment was the contracts between the Brotherhood and the railroads. He had no individual contract of employment. Another fact appearing is the practice of making up what is called an "Extra Board". This board was made up of about twenty men taken from the seniority list, the names being placed on the extra board in the same order they stood on the seniority list, and as work was available, were called in the order of their names, and when a man was placed on the "Extra Board" it was estimated that he would get an average of twenty working days a month as long as he stayed on the board; the board would be reduced in number from time to time or men added to the board from time to time to bring about the approximate average. Deceased was placed on the extra board on February 15, 1937, and was called to work on March 1st, the day before his death. For about one year prior to February 15, 1937, deceased was on furlough from the railroad company, during which time he worked at other jobs, among them that of stone cutter, and during the year immediately preceding his death contributed about $1,500 to the support of his family.

The only evidence in the record showing the average

weekly wage earned during the fifty-two weeks prior to the death of deceased by a person in the same grade, employed at the same work by the same employer, is that extra board employees got in on an average of twenty days per month, for which they received $6.62 per day. The membership on the board was so balanced that the men thereon would average twenty days work per month.

Section 6852 (c) of the Code (Workmen's Compensation Law) is as follows:

" 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury divided by fifty-two; but if the injured employee lost more than seven days during such period when he did not work, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results just and fair to both parties will thereby be obtained. Where by reason of the shortness of the time during which the employee has been in the employment of his employer, it is impracticable to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the first fifty-two weeks prior to the injury or death was being earned by a person in the same grade, employed at the same work by the same employer, and if there is no such person so employed, by a person in the

same grade employed in the same class of employment in the same district.''

 The foregoing sub-section provides three methods for computing compensation. It is obvious that neither the first nor second method can be applied in the instant case. The third method, however, we think, has application. There is evidence, as hereinbefore noted, that employees in the same grade with deceased, employed at the same work by the same employer, received $6.62 per day for eight hours work for six days a week; that when such employees were on the ''extra board'' they worked on the average for twenty days per month, and deceased was on the ''extra board.''

It is argued by able counsel for defendant that no other person could possibly be in the same grade with deceased because of the seniority list being what is was, that deceased was in a class to himself. This argument, we think, overlooks the fact that deceased was on the ''extra board,'' and that the board was so operated as to afford the men thereon employment for an average of twenty days per month. There is no evidence that deceased had been cut off the board before his accidental death. The showing that one Lancaster, who was ahead of deceased on the extra board, was cut off the board on April 15th, proves nothing because there is no showing why Lancaster was dropped from the board. It was not shown that it resulted from lack of available work.

The trial judge computed compensation on the basis of $6.62 per day for a six day week. But, the employees of the same grade, etc., worked only on an average of twenty days per month, or 240 days per year, at $6.62 per day, which at the rate of $6.62 per day amounts to $1,588.80 per year or an average weekly wage of $30.73. Forty per cent of this weekly wage is $12.88, instead of

$15.88 as fixed by the trial judge on the basis of 52 weeks at $39.72, per week. This decree will be modified accordingly.

█ Defendant's assignments of error are overruled. Petitioner's assignment of error is likewise overruled. Interest on the award from date of judgment is proper. *White* v. *Pinkerton Co.*, 155 Tenn., 229, 291 S. W., 448.

With the above noted modification the judgment of the trial judge is affirmed, and the case remanded. Appellant will pay the costs of the appeal.