JAMES HARTLEY *v.* LIBERTY MUTUAL INSURANCE COMPANY.

(*Knoxville,* September Term, 1954.)

Opinion filed December 16, 1954.

Rehearing denied December 16, 1954.

On Second Petition for Rehearing March 11, 1955.

MILLER & MILLER, of Johnson City, for complainant.

SIMMONDS, BOWMAN & HERNDON, of Johnson City, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

A petition to rehear has been filed by James Hartley complaining of error by the Court in failing to adjudge the correct amount of petitioner's weekly wage for the 52 weeks next preceding his injury. We affirmed the ruling of the Chancellor in this regard and, upon a re-examination of the issue, feel confident that the decision is correct. The petition is accordingly denied.

Inasmuch as the counsel for the respective parties have expressed a desire that the opinion be clarified upon some issues of fact, as well as law, we are pleased to withdraw it and file this opinion in which we respond again to the several assignments of error.

The complainant, James Hartley, filed his original bill in the Chancery Court and alleged: (1) that he was in the regular employ of the Sells Lumber and Manufacturing Company of Johnson City, Tennessee, and while so employed his right arm was cut off by the wheels of a box car; (2) that his employer was obligated to pay

him compensation as provided by law; (3) his average weekly wage for 52 weeks preceding his injury was approximately $38.40, or a part of the week that he actually earned a wage; (4) petitioner's medical bills have all been paid by his employer and the defendant (the insurance carrier) has paid him $12.70 each week since his injury and has agreed to furnish him an artificial limb; (5) petitioner has been totally unable to work and his total temporary disability will continue an indeterminate time. The prayer of the bill is that petitioner be awarded that compensation to which he is entitled, together with such other and further relief as the court may deem proper.

All of the charges appearing in the first four paragraphs of the bill are admitted in the answer to be true. In response to the charge in paragraph five the answer denies "that petitioner is now totally disabled", but has been for some time able to resume such employment as is customarily done by one-armed persons. The answer further recites that the only dispute between it and the petitioner is the amount of his average weekly wage for 52 weeks preceding the injury. The dispute arises from the fact that in computing the petitioner's average weekly wage the defendant insists that petitioner was out on a strike (all employees being on a strike) for 16 weeks during the aforesaid 52 weeks, during which time he received no earnings and this time should not be deducted from the 52 weeks in computing his average weekly wage. The answer admits that it was and is proper to deduct the 8 weeks period lay-off for the company to make necessary repairs to its plant.

The petitioner, however, contends that both the 8 weeks and the 16 weeks should be deducted.

The record shows without dispute that the weekly wage paid to petitioner (when he worked the full eight hours a day) was $38.40. Of course when the plant was closed for repairs, and when the petitioner and other employees were on strike he was paid nothing, which necessarily reduced his total earnings for the year and also the amount of his average weekly wage.

The Chancellor sustained the defendant's contention that the 16 weeks' period should not be deducted in computing his average weekly wage and decreed accordingly.

The Chancellor found that the petitioner had worked for the Sells Lumber and Manufacturing Company for several years before the injury; that during the 52 weeks next before the accident his total earnings were $930.96; that the 16 week strike period should not be deducted from the 52 weeks, on the authority of *New Jellico Coal Co.* v. *Kenner,* 172 Tenn. 185, 110 S.W. (2d) 476. In ruling upon the amount of petitioner's average weekly wage the Chancellor divided the total earnings of $930.96 by 44 weeks (deducting only the eight weeks' shutdown for repairs) showing the wage to be $21.16. By taking 60 per cent of this amount, his compensation rate is fixed at $12.70.

It was further decided that compensation for the additional period of 200 weeks for the specific loss of his arm should be paid consecutively rather than concurrently with the temporary total disability compensation.

The petitioner appealed to this Court and assigned as error the following: (1) The Chancellor erred in dividing 44 as the total number of weeks appellant was employed during the 52 weeks preceding his injury into $930.96. (2) The Chancellor erred in concluding that the time lost by strike must be included in the calculation to reduce appellant's average weekly wage. (3) "The

Chancellor erred in concluding that this appellant is not entitled to the concurrent payment of his total temporary and partial permanent disability compensations and in awarding those compensations consecutively (Transcript 11) reduced the compensation received by this appellant.''

The statute which prescribes the methods for determining the average weekly wages of an injured employee is found in subsection (c) of Code Section 6852. This section has been construed many times by our Court. In *White* v. *Pinkerton Co.*, 155 Tenn. 229, 291 S. W. 448, 449, the Court set out three methods, as follows:

> ''(1) Where the employee has been working for the employer for as much as a year, prior to the injury, divide the total wages received by fifty-two.
>
> ''(2) Where the employment, prior to the injury, was less than 52 weeks, divide the total wages received by number of weeks employed; 'provided, results just and fair to both parties will thereby be obtained.' ''

(The third method is omitted because it could have no application whatever to the case at bar.)

The foregoing methods conform to both the letter and spirit of the statute.

Among the numerous cases dealing with the question now under consideration are the following: *White* v. *Pinkerton Co.*, supra; *Braggs Quarry* v. *Smith*, 161 Tenn. 682, 33 S. W. (2d) 87, 34 S. W. (2d) 714; *A. G. S. R. Co.* v. *Wright*, 175 Tenn. 138, 133 S. W. (2d) 457; *Toler* v. *Nashville, C. & St. L. Ry.*, 173 Tenn. 378, 117 S. W. (2d) 751; and *New Jellico Coal Co.* v. *Kenner*, 172 Tenn. 185, 110 S. W. (2d) 476.

[redacted] The case at bar is controlled by method No. 1, which we copied in full in this opinion, and took from

*White* v. *Pinkerton Co.,* supra. The petitioner had worked for the Sells Lumber Co. for more than a year prior to the accident; in fact he had been employed by this company for several years. The Chancellor, in determining petitioner's average weekly wage, could not do otherwise than divide his total earnings for the year by the number of weeks he worked. The period of 16 weeks was not lost to the petitioner by sickness or closing the plant for repairs. On the contrary his total earnings for the year were reduced by his own voluntary act, and of course his weekly wage was likewise reduced from what it would have been had he worked the entire 52 weeks. The question was definitely settled in the case of *New Jellico Coal Co.* v. *Kenner,* cited by the Chancellor.

The average weekly wage of an employee should not, and is not, decreased for reasons over which he has no control, such as closing a plant for repairs (as in the instant case), occasional "suspension of operations due to bad weather", unforeseen shortage of material, "lack of orders, lack of cars, slack season", etc. It is observed that all of the foregoing are occasions and conditions resulting in the cessation of operations by the employer, and should not be considered in determining the average weekly wage of an injured employee. But a strike, in which the injured employee voluntarily participates, does not fall within the same category The law does not recognize it as such. A "strike" could be a voluntary "lay-off" that is beyond the pale of the law, such as so-called "wild cat" strikes, unauthorized "jurisdictional strikes", and others which serve only the mere whim and caprice of a few persons without regard to the interest of fellow employees or the employer. The strike in the instant case was due to the failure of the Union to

negotiate a satisfactory contract with the Sells Lumber Company.

Contention is made by the petitioner that we failed to mention the case of *Toler* v. *Nashville, C. & St. L. Ry.,* supra [173 Tenn. 378, 117 S. W. (2d) 751], in deciding the case; that it, in effect, had overruled the holding in *New Jellico Coal Co.* v. *Kenner.* We did not mention it because'it has no application to the issue involved. In that case the employee had worked ''intermittently or irregularly'' for the railroad for ten years. He had not, however, been regularly employed for a year prior to his injury, and hence his wages received could not be divided by 52 to ascertain his average weekly wage. There were only 14 weeks out of the 52 weeks preceding the accident during which the petitioner earned wages. He was not on a strike, either lawful or unlawful. The Court was hence compelled to apply a method that would be ''just and fair'' to the employee and his employer, and which the statute expressly authorized.

In *Braggs Quarry* v. *Smith,* 161 Tenn. 682, 33 S. W. (2d) 87, 88, 34 S. W. (2d) 714, relied on by petitioner, the employee had lost the sight of both eyes. He kept no account of wages received; he was an ignorant Negro who worked ''when it suited him''. During the year preceding the accident he had ''worked on an average of less than three days per week''. The Court in response to a petition to rehear referred to *White* v. *Pinkerton Co.,* supra [155 Tenn. 229, 291 S. W. 449], as follows:

''After a careful consideration of the statute, we have concluded that the object of the act was to compensate a disabled employee, to the extent of 50 per cent. of the wages he had been receiving, for a given number of weeks.

"When the court can see that the application of this rule would be unfair, and evidence has been introduced that would justify us in applying some other rule, we would not hesitate to do so."

Thus it appears that neither in this case nor in *Toler* v. *Nashville, C. & St. L. Ry.* did the Court make any statement that could be construed as changing the method of computing the average weekly wage as provided by the statute and followed by this Court in its decisions, to which we have referred. Moreover nothing is said in *Braggs Quarry* v. *Smith* that would "justify us in applying some other rule" to the facts of the instant case in determining petitioner's average weekly wage contrary to the method used by the Chancellor. There are no facts in the record to justify us in departing from our decision in *New Jellico Coal Co.* v. *Kenner.*

We cannot agree with the complainant's insistence that *New Jellico Coal Co.* v. *Kenner,* supra, is in conflict with Article 1, Section 8, of the Constitution of Tennessee, and the Fourteenth Amendment to the Constitution of the United States, in that we make a discrimination that deprives the complainant of the equal protection of the law, and "due process"; that under the foregoing provisions the complainant, though on strike, lawful or unlawful, is entitled to be counted as earning wages. We know of no authority supporting this contention. Assignments of error one and two are overruled.

Coming now to a consideration of the third and last assignment of error that the Chancellor erred in holding that compensation payments to the complainant run consecutively and not concurrently, we have consistently followed the mandate of the statute that it must be liberally construed in favor of the injured employee. The Court must ever bear in mind that the statute makes provision

for the loss of income during the employee's temporary inability to work and his decreased capacity to work by reason of the loss of a particular member. In other words this loss should be assumed by industry.

The case of *Brooks* v. *Memphis Compress & Storage Co.,* 188 Tenn. 115, 216 S. W. (2d) 746, which was decided at the December term 1948, held that compensation during the healing period should be deducted from the award for permanent partial disability. The applicable Code Section is subsection (c) of Section 6878 and provides that in addition to the compensation paid during *temporary total disability,* i.e. the healing period, "he shall receive sixty percent of his average weekly wages in accordance with the schedule hereinafter set out, provided, that the compensation paid the injured employee for the period of temporary total disability *shall not be deducted from the compensation to be paid under said schedule."* (Italics ours). We cannot agree that the statute supports the contention of the appellee. The argument of counsel that our conclusion would enable the complainant to recover double compensation benefits is based solely upon a mathematical calculation. No account, however, is taken of the fact that the employee has sustained an injury that reduces his ability to earn a competence for the rest of his natural life. We think the law clearly provides for concurrent payments of the two disability compensations.

The decree of the Chancellor will be affirmed, but modified in accordance with this opinion. The cost is adjudged against the appellee.

The case should be, and is, remanded to the Chancery Court for such future orders as may be necessary for enforcement of the decree. This procedure is generally followed in all compensation cases, especially where pay-

ments are made to the clerks of the court, and cases where the employer, or his insurance carrier, is entitled to have the case re-opened to determine whether or not payments should continue.

### ON SECOND PETITION FOR REHEARING.

We respond to the second petition to rehear in order to further clarify the Court's opinion upon the question of compensation payments, that is, whether or not the payments for total temporary disability and those for total permanent disability run concurrently or consecutively.

The issue is clear in the mind of the Court that the injured employee is entitled to recover compensation benefits "for the period of time while he was temporarily totally disabled, and also for 200 weeks in addition thereto for the specific injury for the loss of his arm." ·

The foregoing is a quotation from the brief of the counsel for the appellee. The counsel contends, however, "that it (the employer) should not make double payments during the period of time he was temporarily totally disabled." We think it is wholly immaterial when the employer starts payments for total permanent disability, i.e., whether made at the time of the injury or at some time thereafter. The record shows without dispute that the employer paid the petitioner 60% of his average weekly wage "until he returned to work", as required by the statute. Had the employer started payment of compensation benefits for the loss of petitioner's arm before the latter returned to work, there would have been double payments, or concurrent payments, for that period of time. But the employer would have been entitled to credit for each of the payments so made. In other words

the employer would have thus discharged his liability for compensation during a portion of the time he was "totally partially disabled", and for some portion of the 200 weeks he was liable for "total permanent disability". Whether the payments thus made are to be denominated as "consecutive" or "concurrent" is, in our opinion, wholly immaterial. It is expressly provided by the amendatory Act of 1951, as pointed out in the original opinion, that payments for total temporary disability shall not be deducted from compensation payable for the loss of a particular member.