(No. 52673.-

MONTEREY COAL CO., Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Ray A. Caver, Appel-
lee).

*Opinion filed March 28, 1980.*

Robert L. Mueller, of Livingstone, Mueller, Drake & Davlin, of Springfield, for appellant.

Lindholm & Williamson, of Peoria (Harold G. Lindholm and Nile J. Williamson, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

On the day he returned to work after a 16-week hiatus due to a strike, the claimant, Ray A. Caver, was injured. The arbitrator entered an award of compensation for the claimant based on his average weekly earnings for the year next preceding the injury, minus the 16 weeks the claimant was absent because of the strike. The Industrial Commission affirmed the arbitrator's award, and the circuit court of Macoupin County confirmed the decision of the Commission. An appeal was taken pursuant to Rule 302(a). 73 Ill. 2d R. 302(a).

The claimant had been employed by the respondent, Monterey Coal Company (Monterey), except for a brief respite, since June 1972. He participated in the strike of the United Mineworkers of America, of which he was a member, which occurred from December 6, 1977, to March 27, 1978. The day the strike ended, March 27, 1978, the claimant returned to work for Monterey. On that day the claimant injured his knee while in the process of placing bolts in a roof.

The only issue raised on appeal is whether the claimant's average weekly earnings should be computed to include the 16 weeks spent on strike. Section 10 of the Workmen's Compensation Act is the applicable provision. It states in pertinent part:

"The basis for computing the compensation provided for in Sections 7 and 8 of the Act shall be as follows:

(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.

(b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident, uninterrupted by absence from work due to illness or any other unavoidable cause." Ill. Rev. Stat. 1977, ch. 48, par. 138.10.

Monterey argues that employment interrupted by participation in a strike is not an unavoidable cause. It refers us to the case of *Caterpillar Tractor Co. v. Durkin* (1942), 380 Ill. 11. That case is not of aid to Monterey, however, because it concerned a provision of the Unemployment Compensation Act which expressly provided that an individual shall be ineligible for benefits:

"(d) For any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided, that this subsection shall not apply if it is shown that (1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (2) He does not belong to a grade or class of workers of which immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purpose of this subsection, be deemed to be a separate factory, establishment, or other premises." (Ill. Rev. Stat. 1941, ch. 48, par. 223.)

The court held in *Caterpillar Tractor Co.* that the striking employees were not entitled to recover unemployment compensation, based on the clear language of the Act. Monterey asserts that the foregoing section of the Unemployment Compensation Act is indicative of legislative intent that participation in a strike constitutes "voluntary unemployment" and is not an "unavoidable cause" of absence within the meaning of the Workmen's Compensation Act. We disagree with Monterey's analysis. The disparity between the two acts is, we think, indicative only of the fact that the General Assembly considered labor disputes in relation to unemployment compensation, but, intentionally or not, has made no decision as to workmen's compensation. In the absence of a statutory provision treating the topic, we can draw no such definite inference of legislative intent. We therefore reject Monterey's argument; *Caterpillar Tractor Co. v. Durkin* and the Unemployment Compensation Act have no applicability to the instant case.

The General Assembly has used the general word "unavoidable" presumably so as to leave the resolution of cases to the judgment of the courts. (See *Harper v. Industrial Com.* (1962), 24 Ill. 2d 103, where the court concluded as a matter of law, and in the absence of a controlling statutory provision, that suicide, as an intervening cause between an injury and death, may be work related and compensable.) Thus, while the precise factual situation presented may not be expressly covered by this statute, we must attempt to "*quarr[y] out of it* in the light of the new situation" the sense of the legislature's purpose. (Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed,* 3 Vand. L. Rev. 395, 400 (1950).) It is our conclusion that labor disputes such as strikes should be considered to be unavoidable causes within the meaning of section 10(b) of the Workmen's Compensa-

tion Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.10(b)). Since there is no clear legislative direction in the matter, we refuse to confront the individual employee with the dilemma of choosing between, on the one hand, participating in a strike and thus risking a substantial reduction in workmen's compensation benefits should he be injured within the ensuing year and, on the other hand, declining to participate in a strike and thereby facing fines and perhaps expulsion from the union. (See *NLRB v. Allis Chalmers Manufacturing Co.* (1967), 388 U.S. 175, 18 L. Ed. 2d 1123, 87 S. Ct. 2001, wherein the court held it permissible to fine union members for strikebreaking. The court stated: "The economic strike against the employer is the ultimate weapon in labor's arsenal for achieving agreement upon its terms and '[t]he power to expel or fire strikebreakers is essential if the union is to be an effective bargaining agent ***.' Provisions in union constitutions and bylaws for fines and expulsion of recalcitrants, including strikebreakers, are therefore commonplace and were commonplace at the time of the Taft-Hartley amendments." (388 U.S. 175, 181-82, 18 L. Ed. 2d 1123, 1128-29, 87 S. Ct. 2001, 2007, quoting, Summers, *Legal Limitations on Union Discipline* 64 Harv. L. Rev. 1049, 1051 n.7 (1951).) It is difficult to be convinced that the General Assembly intended to premise the recovery of workmen's compensation benefits upon such untenable grounds. In addition, deciding that absence from work caused by participation in a strike is not an "unavoidable cause" would hardly be in keeping with "the practical and liberal interpretation" of the Act "intended by the legislature." *Vaught v. Industrial Com.* (1972), 52 Ill. 2d 158, 165; *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 444-45.

Monterey further urges that section 10(b) requires that the average weekly wage must be computed by dividing the claimant's actual annual earnings by 52 weeks. In

support of its assertion, Monterey refers us to two Tennessee cases: *Hartley v. Liberty Mutual Insurance Co.* (1954), 197 Tenn. 504, 276 S.W.2d 1, and *New Jellico Coal Co. v. Kenner* (1937), 172 Tenn. 185, 110 S.W.2d 476. These cases do not assist in resolving the instant inquiry, however, because of the imperative interpretation of the Tennessee statute which has been made by the Tennessee court:

"(1) Where the employee has been working for the employer for as much as a year, prior to the injury, *divide the total wages received by fifty-two.*

(2) Where the employment, prior to the injury, was less than 52 weeks, divide the total wages received by number of weeks employed; provided, results just and fair to both parties will thereby be obtained." (Emphasis added.) (*Hartley v. Liberty Mutual Insurance Co.* (1954), 197 Tenn. 504, 508, 276 S.W.2d 1, 3, quoting a paraphrase of the statute in *White v. Pinkerton Co.* (1927), 155 Tenn. 229, 231, 291 S.W. 448, 449.)

Clearly, this is a different statute and requires construction different from our open-ended statute.

We think a case which is more pertinent is *Rakie v. Jefferson & Clearfield Coal & Iron Co.* (1918), 262 Pa. 444, 105 A. 638. In that case, the employee was killed in a mine accident. During the six months preceding the employee's death, there were 184 calendar days. On 88 of those days the mine was closed and the employee did not work. Although it was not noted in the body of the opinion, a headnote accompanying the decision stated the mine closing was "on account of a labor dispute." (105 A. 638.) The record contained a finding, adopted by the Compensation Board, that the employee's "idleness during this period was not due to any fault of his own." (262 Pa. 444, 445, 105 A. 638, 639.) The court then stated:

"To arrive at a divisor, for the purpose of

determining the average daily earnings of deceased, in order to calculate his weekly wage, so as to ascertain the compensation payable to claimant, the before-mentioned 88 days, together with Sundays and holidays occurring during the six months in question, were deducted in accord with the relevant standing rule of the board [governing the arithmetical computation of compensation]." (262 Pa. 444, 445, 105 A. 638, 639.)

The court concluded that it had been appropriate to deduct the days missed due to the labor dispute. While the court did not divulge its reasoning, the implication is that absence from work because of a labor dispute is not absence attributable to the fault of the employee. In a similar vein, we hold that the claimant's absence due to participation in a strike was an unavoidable cause within the meaning of the Workmen's Compensation Act. When confronted with the irreconcilable choices previously discussed, the claimant had, practically speaking, no alternative but to participate in the nationwide mine workers strike. It would not be fair or just to subject him to penalties no matter which choice he made.

Finally, we note that the strike involved in this case was lawful and fully authorized by the union. Whether the same result would obtain in a case where the strike was illegal or unauthorized is an issue we do not consider.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Macoupin County, confirming the award of the Industrial Commission, is affirmed.

*Judgment affirmed.*