FILED
**Aug 24, 2020**
**12:12 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| IVON FAULKNER,<br>　　　　Employee,<br>v.<br>UNITED PARCEL SERVICE,<br>　　　　Employer,<br>and<br>LIBERTY MUTUAL INS. CORP.,<br>　　　　Carrier,<br>and<br>SUBSEQUENT INJURY AND<br>VOCATIONAL RECOVERY FUND. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2018-08-0321<br><br><br>State File No.: 45308-2016<br><br><br>Judge Deana C. Seymour |

## COMPENSATION ORDER

Ivon Faulkner sustained compensable injuries on June 13, 2016, while working for United Parcel Service. At issue are the extent of Mr. Faulkner's permanent disability and his entitlement to additional temporary disability benefits, attorney's fees, and expenses. The Court heard this case on July 22, 2020, and holds Mr. Faulkner is entitled to permanent partial disability benefits, including increased benefits, and awards attorney's fees of 20% from his recovery. The Court denies Mr. Faulkner's claim for additional temporary disability benefits.

## History of Claim[1]

Mr. Faulkner injured his low back and right shoulder while delivering a roll of wire for UPS. He received authorized treatment from neurosurgeon Dr. Rodney Olinger and orthopedic surgeon Dr. Bret Sokoloff.

Dr. Olinger testified by deposition that he first saw Mr. Faulkner on June 25, 2016. He diagnosed an L4 herniated disk in his back. Dr. Olinger excused Mr. Faulkner from work and ordered physical therapy until the insurer denied additional therapy in

---

[1]*See* Exhibit 12 for party stipulations with stipulation 14 revised by the parties as follows: 14. Mr. Faulkner did not have a meaningful return to work at UPS due to restrictions assigned by Dr. Olinger as a result of injuries sustained in the June 13, 2016 accident.

1

November 2016.

Mr. Faulkner returned to Dr. Olinger in March 2017 for back surgery. A month later, Dr. Olinger performed a left L4 diskectomy. He placed Mr. Faulkner at maximum medical improvement on June 20, assessed a permanent impairment rating of 8% to the body for his low back, and released him to seek orthopedic treatment for his shoulder.

Dr. Olinger concluded that Mr. Faulkner had an excellent recovery from surgery but could no longer perform the heavy industrial work he did before this accident.[2] He permanently restricted Mr. Faulkner's activities to occasional lifting of no more than fifty pounds and frequent lifting of no more than ten pounds, which placed him in the medium industrial work category. Dr. Olinger explained that Mr. Faulkner could work in a different position within those restrictions.

After release for his back injury, Mr. Faulkner accepted authorized treatment for his shoulder from Dr. Bret Sokoloff, who diagnosed a right-shoulder strain. He placed him at maximum medical improvement on June 29, concluding he had no permanent impairment or physical restrictions related to his right shoulder.

In June 2019, neurosurgeon Dr. John Brophy became Mr. Faulkner's authorized treating physician after Dr. Olinger retired. He examined Mr. Faulkner for back pain and stiffness. He diagnosed "chronic back pain associated with lumbar spondylosis and possible myofascial component. His radiculopathy has resolved." Dr. Brophy cleared him "to remain at a full duty work status" as a church bishop.

In August, a vocational expert, Michelle Weiss, evaluated Mr. Faulkner. She concluded that he was not permanently and totally disabled. Ms. Weiss described Mr. Faulkner as well-spoken, articulate, and personable, and he performed average to above-average on achievement testing. Ms. Weiss testified that his test results demonstrated his ability to excel in job retraining.

However, Ms. Weiss learned from Mr. Faulkner that he was near retirement, had not searched for a job, and was not interested in changing careers. She noted that his medical records documented subjective complaints that exceeded his restrictions. Ms. Weiss testified that Mr. Faulkner's permanent restrictions prevented him from returning to his heavy labor job for UPS but did not prevent him from performing medium-range, entry-level skilled and semiskilled jobs earning between $9.00 and $13.00 per hour, resulting in a sixty-eight percent wage loss. She concluded Mr. Faulkner retained 61% vocational disability.

Mr. Faulkner testified that he is fifty-eight years old and described himself as intelligent with an ability to learn new skills. He took college and technical school courses in engineering and pre-law. He also took a writing course from a renowned

---

[2] Dr. Olinger reviewed Mr. Faulkner's history of knee and back problems before this 2016 accident but stated that these conditions did not preclude him from performing his physically demanding job at UPS.

2

author. Mr. Faulkner served as an Army Reserve medic for six years and received an honorable discharge. He ran for state senate twice and city council once and managed his own campaigns.

Mr. Faulkner worked thirty-six years as a courier for UPS. He also served as union shop steward. Mr. Faulkner defined the UPS job as "heavy" and recounted several work injuries. However, he worked full duty, including overtime, without restrictions until his June 2016 injury. Afterward, UPS could not accommodate his work restrictions and terminated him.

After his termination, Mr. Faulkner did not look for a job or apply for vocational services because he did not believe anyone would hire him given his lack of physical stamina, inability to get in and out of a vehicle, and problems with sitting or standing for any length of time. Mr. Faulkner testified that he could probably work part-time at a job that would accommodate his restrictions, allow a flexible work schedule, and pay a significant amount, but he doubted this job exists.

Regarding his activities since leaving UPS, Mr. Faulkner testified he was appointed bishop for his church. As bishop, he presides over funerals and baptisms in his church of approximately 600 members. He also provides counseling and oversees local missionary work. He does not earn an income from this job.

Also, when time allows, Mr. Faulkner pursues his goal to become an author of religious books. He has limited computer skills and handwrites his texts. He has not yet earned income from this pursuit.

The parties agreed that UPS paid all authorized medical expenses. It paid temporary total disability benefits at a rate of $910.13 from June 16, 2016, to June 29, 2017, totaling $49,227.04. They also agreed that the compensation rate for permanent partial disability benefits was $858.00 and that UPS advanced payment of $6,864.00, to which it was entitled a credit against the final award.

*Issues*

First, the parties disagreed on the extent of Mr. Faulkner's vocational disability. Mr. Faulkner argued he is permanently and totally disabled. He also pursued benefits from the Subsequent Injury Fund based on earlier work injuries. Alternatively, Mr. Faulkner claimed entitlement to permanent partial disability benefits based on his impairment rating plus increased benefits because UPS could not accommodate his permanent restrictions and he did not return to work for any employer.

To the contrary, UPS contended that Mr. Faulkner's permanent partial disability benefits should be based only on his 8% impairment rating, since he made no attempt to seek gainful employment after reaching maximum medical improvement. It insisted Mr. Faulkner has not proven permanent and total disability given Ms. Weiss's testimony and his lack of effort in finding work.

The Subsequent Injury Fund agreed with UPS regarding permanent total disability, which it argued eliminated Mr. Faulkner's eligibility for benefits from the Fund.

Second, the parties disagreed on the amount of TTD to which Mr. Faulkner was entitled. Mr. Faulkner claimed he is entitled to TTD benefits of $910.13 per week from June 13, 2016, through June 29, 2017, resulting in an underpayment.

UPS disagreed and contended it is entitled to a credit for its overpayment of TTD benefits. According to UPS, the wage statement mistakenly omitted the week of August 1, 2015. Therefore, it argued that the total fifty-two weeks of earnings should be divided by fifty-two instead of fifty-one weeks, resulting in a weekly compensation rate of $892.68 rather than the $910.13 weekly rate it paid. Thus, Mr. Faulkner was entitled to TTD benefits of $892.68 per week from June 16, 2016, through June 29, 2017.

Lastly, Mr. Faulkner requested attorney's fees and costs.

UPS agreed Mr. Faulkner's attorney is entitled to a 20% attorney's fee from Mr. Faulkner's recovery. However, it argued he is not entitled to an additional award of attorney's fees from UPS under section 50-6-226(d)(1).

### Findings of Fact and Conclusions of Law

Mr. Faulkner must establish all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6).

The Court first considers the extent of Mr. Faulkner's permanent disability. He contends that he is entitled to permanent total disability benefits under Tennessee Code Annotated section 50-6-207(4)(B), which provides: "When an injury . . . totally incapacitates the employee from working at an occupation that brings the employee income, the employee shall be considered totally disabled[.]" To determine the issue, the Court must consider factors such as the employee's skills, education, age, training, and "job opportunities in the immediate and surrounding communities, and the availability of work suited for an individual with that particular disability." *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 535-36 (Tenn. 2006).

Mr. Faulkner is fifty-eight years old with a high school diploma and college coursework in engineering and pre-law. He performed heavy work as a courier for UPS for thirty-six years. He sustained several work injuries during that time and received permanent disability benefits for bilateral knee injuries in 1997 and a 2008 back injury. None of those injuries resulted in permanent restrictions, and he continued to work full duty plus overtime until this June 13, 2016 injury.

The Court observed Mr. Faulkner as well-spoken, articulate, and personable. He had not looked for a job and expressed his reluctance to return to the workforce because

of his age and physical inabilities.

Instead, Mr. Faulkner became a bishop for his church, where he engages in various, non-physical duties. He described himself as intelligent with the ability to learn new skills. In his spare time, Mr. Faulkner pursues his aspirations of becoming an author, although his limited computer skills require him to handwrite his texts.

From a medical perspective, Dr. Olinger rated Mr. Faulkner's impairment at 8% and, due to his low-back injury, permanently restricted his activities to occasional lifting of no more than fifty pounds and frequent lifting of no more than ten pounds. He testified that these restrictions do not preclude Mr. Faulkner from working in a different position within those restrictions. Dr. Sokoloff also concluded Mr. Faulkner retains no permanent impairment or physical restrictions for his right-shoulder injury.

As for a vocational assessment, Ms. Weiss determined Mr. Faulkner has above-average intelligence for his age. She testified that while he could not return to heavy labor, he is not permanently and totally disabled. She felt that he can perform medium-range, entry-level skilled and semiskilled jobs and concluded he retains a 61% vocational disability.

Based on this evidence, the Court holds Mr. Faulkner's injuries did not permanently and totally incapacitate him from working at any occupation that brings him income. Therefore, he is not entitled to permanent total disability benefits, and the claim against the Subsequent Injury Fund is dismissed.

The Court must now determine the extent of Mr. Faulkner's permanent partial disability. Initially, Mr. Faulkner is entitled to thirty-six weeks of benefits based on his permanent impairment rating of 8%. *See* Tenn. Code Ann. § 50-6-207(3)(A). Tennessee Code Annotated section 50-6-207(3)(B) provides that the employee may claim increased benefits at the end of his compensation period if he has not returned to work for any employer or has returned to work receiving less wages or salary than he received before his work injury. This is known as the "resulting award," which is calculated by applying certain multipliers to the original award.

Here, the Court finds that Mr. Faulkner is entitled to increased benefits. He did not return to work at the end of his compensation period, and his permanent restrictions exclude him from jobs with the earning potential he had before his work injury. Specifically, Ms. Weiss testified that Mr. Faulkner's permanent restrictions resulted in a 68% wage loss.

Mr. Faulkner qualifies for two of the multipliers: he did not successfully return to work (1.35) and is over forty years old (1.2). Thus, the resulting award totals $50,038.56.[3]

---

[3] 450 weeks x 8% x $858.00 = $30,888.00 (original award) x 1.35 x 1.2 = $50,038.56.

The Court next considers adjustments claimed against the resulting award. The first is for advanced payments, and the second is for overpaid temporary benefits. The parties agreed that UPS is entitled to a credit of $6,865.00 for advanced payment of PPD benefits.

UPS also claimed it overpaid temporary disability benefits and requested a credit. Mr. Faulkner, on the other hand, claimed UPS underpaid his temporary benefits, entitling him to additional benefits.

To receive temporary disability benefits, Mr. Faulkner must prove (1) disability as a result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

In this case, Mr. Faulkner met the first two elements. As for duration, Dr. Olinger wrote on the Final Medical Report that Mr. Faulkner was restricted from work from June 25, 2016, to June 20, 2017. During his deposition, he testified that Mr. Faulkner was off work since June 15, 2016. He further testified that he did not know whether Mr. Faulkner should have been off work from his injury date of June 13, since he had not seen him, but he noted "it sounds like he should have been off of work." The parties stipulated that Mr. Faulkner reached MMI when released by Dr Sokoloff on June 29, 2017. Taken as a whole, the Court finds Mr. Faulkner was temporarily disabled from June 15, 2016, to June 29, 2017, a total of 54.29 weeks.

The weekly compensation rate is based on two-thirds of the employee's average weekly wage. Tenn. Code Ann. § 50-6-207(1)(A). The average weekly wage is calculated by dividing the employee's earnings for fifty-two weeks before the date of injury by fifty-two. Tenn. Code Ann. § 50-6-102(3)(A). Days lost from work can only be deducted from the average weekly wage calculation if those days are lost due to sickness, disability, or other fortuitous events. *See Hartley v. Liberty Mut. Ins. Co.*, 276 S.W.2d 1, 3 (Tenn. 1954).

UPS contended, and the wage statement reflected, that one week of benefits was mistakenly omitted – a vacation week – resulting in an incorrect average weekly wage and TTD compensation rate. The Court agrees and finds the correct average weekly wage is $1,338.95 resulting in a weekly compensation rate of $892.68.

Therefore, Mr. Faulkner was entitled to $48,463.60 in temporary total disability benefits.[4] Reducing that amount by UPS's payment of $49,227.04 results in a credit of $763.44 against the final award of permanent disability benefits.

Accordingly, UPS owes Mr. Faulkner $42,410.12 in PPD benefits.[5]

---

[4] 54.29 weeks x $892.68 = $48,463.60
[5] $50,038.56 - $6865.00 (credit for PPD advance) - $763.44 (credit for TTD overpayment) = $42,410.12.

Finally, Mr. Faulkner requested attorney's fees and costs. The Court finds Mr. Faulkner's attorney provided good and valuable services and is entitled to a fee of 20% of his PPD benefits, or $8,482.02, under Tennessee Code Annotated section 50-6-226. The Court declines to assess attorney's fees against UPS under Tennessee Code Annotated section 50-6-226(d)(1), since UPS accepted this claim and paid all required benefits.

As to expenses, Mr. Faulkner requested discretionary expenses and stated the cost of Dr. Olinger's deposition with recorder fee was $591.15. However, he was awaiting an additional bill, the total of which was unknown. He has not filed and served a motion for discretionary costs as required by Tennessee Rules of Civil Procedure 54.04(2), so the Court lacks enough information to address that request at this time.

**IT IS, THEREFORE, ORDERED as follows:**

1. UPS shall pay Mr. Faulkner a lump sum of $42,410.12, representing permanent partial disability benefits of $50,038.56 minus UPS's total credits of $7628.44, all of which have accrued.

2. Mr. Faulkner is entitled to future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A).

3. Mr. Faulkner's claim against the Subsequent Injury Fund is dismissed with prejudice.

4. Mr. Faulkner's attorney is entitled to a fee of 20% of his total permanent partial disability or $8,482.02, under Tennessee Code Annotated section 50-6-226.

5. Mr. Faulkner may file a petition for discretionary costs.

6. Absent an appeal, this order shall become final thirty days after issuance.

7. UPS shall file a Statistical Data Form (SD-2) with the Court Clerk within five days of the date of this order becomes final.

**ENTERED August 24, 2020.**

_____
**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice (September 7, 2018) along with additional issues raised by the parties
3. Request for Scheduling Hearing
4. UPS's Motion to Compel Discovery from Mr. Faulkner
5. SIF's Motion to Compel Discovery from Mr. Faulkner
6. Order on UPS's Motion to Compel Discovery from Mr. Faulkner
7. Order on SIF's Motion to Compel Discovery from Mr. Faulkner
8. Scheduling Hearing Order
9. UPS's Second Motion to Compel Discovery from Mr. Faulkner
10. Order on UPS's Second Motion to Compel Discovery from Mr. Faulkner
11. Motion to Amend Scheduling Order
12. Order on Motion to Amend Scheduling Order
13. Motion for Continuance, Generally, as it Relates to All Matters, and a New Scheduling Order
14. Order Granting Motion for Continuance and for a New Scheduling Order
15. Amended Scheduling Hearing Order
16. Employer's Motion to Reschedule the Compensation Hearing
17. Order Granting Employer's Motion to Reschedule the Compensation Hearing
18. Motion in Limine of United Parcel Service, Inc. and Liberty Mutual Insurance Co.
19. Employer's Notice of Filing Deposition Transcript of Dr. Rodney Olinger
20. Amended Scheduling Order
21. Dispute Certification Notice (May 1, 2020) along with additional issues raised by the parties
22. Employee's Pre-Hearing Statement
23. Employee's Designation of Witnesses
24. Medical Record Index
25. Trial Stipulations
26. Trial Exhibit Index
27. Pre-Hearing Statement of UPS and Liberty Mutual
28. Tennessee Subsequent Injury Fund's Pre-Hearing Statement
29. Order on UPS's Motion in Limine

Exhibits
1. Job Description
2. Wage Statement
3. Payroll and Attendance documentation
4. UPS Payroll Codes
5. Employee's Choice of Physicians
6. Requests for Admission to the Plaintiff, Ivon Faulkner
7. Order on United Parcel Service's Second Motion to Compel Discovery from Employee
8. Employee's Responses to Employer' Request for Admissions to the Plaintiff, Ivon Faulkner
9. Deposition of Rodney Olinger, M.D. and exhibits to the deposition

10. Workers' Compensation Settlement Documents (May 22, 2008 date of injury)
11. Medical Records filed by parties on July 8, 2020
12. Trial Stipulations
13. Report of Vocational Expert Michelle Weiss
14. Settlement documents regarding 1997 injury from Vocational Expert Michelle Weiss's file

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 24, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|---|
| Skip Carnell, Employee's Attorney | | | | X | injury@memphislaw.com |
| Garrett Estep, Employer's Attorney | | | | X | gestep@farris-law.com |
| Timothy Kellum, SIF's Attorney | | | | X | timothy.kellum@tn.gov |

_____
Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*