654

CHARLES BRYANT et al., DBA BRYANT & PACK
LUMBER CO.,

*v.*

WILLIAM MCALLISTER.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

J. H. HODGES, Knoxville, for plaintiffs in error.

PORTER & PORTER, Newport, for defendant in error.

Mr. Justice Prewitt delivered the opinion of the Court.

The trial judge gave judgment in favor of the employee, William McAllister under the Workmen's Compensation Law, and his employers have appealed. The lower court found that petitioner was working on a 40 hour week basis; that he had actually worked 25.43 weeks, making an average salary of $49.44 per week which entitled him to recover $30 per week for 200 weeks.

On August 14, 1956, while working as a sawyer at defendant's circular saw mill, his arm was injured and as a result was amputated immediately below the elbow joint.

It is not necessary to set out in detail how the accident occurred, as the parties admit the injury and loss of petitioner's right arm; and the petitioner was at the time an employee of the defendants.

The question made in the court below and here is the method of computation of the average weekly wage.

The plaintiff insists that during the last 52 weeks he had worked only 25 2/7 weeks, earning a total of $1,-257.34; while defendants insist that he had worked 43 weeks earning this amount.

The parties agree that for the loss of an arm the petitioner is entitled to recover for 200 weeks at 65% of the average weekly wage.

Section 50-902 of T.C.A., Vol. 9, subsection (c) is the statute involved:

"(c) 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52); but if the injured employee lost more than seven (7) days during such period when he did not work, although not in the same week, then the earnings for the remainder of such fifty-two (52) weeks shall be divided by the number of weeks remaining after the time so lost has been deducted."

Before the accident the petitioner had worked for the defendants for many years, at all times when not laid off because of shortage of materials, over which he had no control.

For a proper termination of this case we are quoting some of the testimony in the court below.

We first refer to the testimony of the petitioner:

"Q. Did you work every day or not? A. No, I did not work every day.

"Q. Were you able, willing, and ready to work every day at the plant? A. Yes.

"Q. Do you know how many weeks you worked during the year preceding August 14, 1956? A. I worked 25 weeks."

Mr. Pack, one of the defendant's composing the partnership of Bryant Pack Lumber Company, testified as follows:

"Q. I believe, Mr. Pack, that Mr. McAllister here was an employee of yours as a sawyer, part of the time * * *. A. He was employed all the time."

The proof shows that the petitioner was laid off from work due to slack season, and because of shortage of materials. Mr. Pack further testified that when they did not have logs to saw the petitioner did not have anything to do.

The defendants operated their plant on a five day work week. This was a 40 hour week, or 8 hour work day.

The proof shows that the petitioner was a regular employee of the defendants, but due to shortage of materials, he was laid off part of the time during the 52 weeks immediately prior to the date of his accident.

The petitioner relies mainly on the holding of this Court in the case of *Wilmoth v. Phoenix Utility Co.,* 168 Tenn. 95, 96, 75 S.W.2d 48, 49.

In that case the Court said:

"The remaining question relates to the amount of the compensation. The chancellor fixed the average weekly wage at $22.76, and this appears to be correct. The company and its insurer contend the figure should be $19.85. The difference arises from a dispute as to the method of making the calculation. The deceased had been a regular employee of this company for several years. He was such an employee during the 52 weeks immediately preceding his death, although he was 'loaned' and worked for another company 3 weeks during that year. Despite this temporary change, we think he should be treated as a regular employee of this company for the year. This was substantially the

case. He therefore falls under the first method provided for by subdivision (c) of the Code, sec. 6852. See *White v. Pinkerton Co.*, 155 Tenn. 229, 231, 291 S.W. 448. Since it appears that he lost more than 7 days during the period, the number of weeks by which his total wages must be divided, in order to arrive at the average weekly wages, is 52 less the number of weeks he lost, and this number of weeks to be subtracted is arrived at by dividing the total days lost from work by seven. As found by the chancellor, his total earnings for the 52 weeks were $1,030.74. He lost 47 days, or 6 5/7 weeks, which deducted from 52 weeks leaves 45 2/7 weeks. This divided into $1,030.74 gives $22.76.

"It results that the decree of the chancellor is in all things affirmed."

The case of *Hartley v. Liberty Mut. Ins. Co.*, 197 Tenn. 504, 276 S.W.2d 1, 3, is relied upon by the company. In that case there was a strike by labor for 16 weeks during the 52 weeks immediately preceding date of employee's injury. During the strike period the employer shut the plant down for repairs. The Court held that the 16 weeks during strike was not deductible from the 52 weeks, but that since the plant was shut down 8 weeks for repairs during this period of strike, the 8 weeks should be deducted, leaving 44 weeks to be divided into gross earnings for the preceding 52 weeks.

In that case the Court further said:

"(2) The average weekly wage of an employee should not, and is not, decreased for reasons over which he has no control, such as closing a plant for

repairs (as in the instant case), occasional 'suspension of operations due to bad weather', unforeseen shortage of material, 'lack of orders, lack of cars, slack season', etc. It is observed that all of the foregoing are occasions and conditions resulting in the cessation of operations by the employer, and should not be considered in determining the average weekly wage of an injured employee.''

On page 510, of 197 Tenn., on page 3 of 276 S.W.2d, in the Hartley case, *supra*, the Court referred to *Braggs Quarry v. Smith*, 161 Tenn. 682, 33 S.W.2d 87, 34 S.W.2d 714, and in distinguishing the cases said:

''In *Braggs Quarry v. Smith*, 161 Tenn. 682, 33 S.W. 2d 87, 88, 34 S.W.2d 714, relied on by petitioner, the employee had lost the sight of both eyes. He kept no account of wages received; he was an ignorant Negro who worked 'when it suited him'.''

At whose instance did the employee lose time from work? Was it the employee's voluntary act, or was it the act and choice of the employer for his benefit and convenience?

In the present case it was not the petitioner's fault that he did not work. It was because of lack of materials, or shortage of orders.

It therefore results that we are of the opinion that the trial judge adopted the proper method of computation and his judgment will be affirmed with costs against the appellants.