## Phillip GOODMAN, Sr.

v.

## HBD INDUSTRIES, INC., et al.

Supreme Court of Tennessee,
at Knoxville.

Sept. 7, 2006 Session.

Nov. 6, 2006.

David M. Sanders, Knoxville, Tennessee, for the appellant, HBD Industries, Inc.

David H. Dunaway, LaFollette, Tennessee, for the appellee, Phillip Goodman, Sr.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., and E. RILEY ANDERSON, Sp.J., joined.

The sole issue in this workers' compensation action is whether weeks spent absent from work due to a strike are included when calculating an employee's average weekly wage. The employee was on strike for twenty-eight weeks and had been back at work for less than a month before becoming injured. The trial court awarded permanent partial disability. When calculating the weekly benefit, the court excluded from its calculation of the employee's average weekly wage those weeks during which the employee was on strike. On appeal, the employer argues that the trial court erred in this calculation. We accepted review before the case was heard or considered by the Special Workers' Compensation Appeals Panel. We hold that the trial court erred in excluding the weeks spent on strike in determining the employee's average weekly wage. Because the employer does not appeal the compensability of the injury or the extent of disability, we affirm the trial court's decision award of benefits, with the amount of benefits modified to reflect the proper calculation of the employee's average weekly wage.

## I. Factual Background

The Plaintiff, Phillip Goodman ("Goodman"), had worked for HBD Industries, Inc. ("HBD") or its predecessor B.F. Goodrich for approximately twenty-six years before becoming injured. Goodman was a member of the Collective Bargaining Union ("the union") at HBD, and, according to Goodman, everyone working at the plant "had to join the union." In the spring of 2001, the union voted to go out on strike after HBD refused to bargain with the union regarding a new contract. Goodman testified that, as a member of the union, he was required to abide by the union bylaws, which forbid union members from crossing the picket line to return to work. However, some employees did cross the picket line and return to work. HBD also hired a number of replacement workers to fill in for the striking workers. The strike lasted twenty-eight weeks, ending in early January 2002.

When Goodman returned to work after the strike, he was working as a "lead head operator," responsible for setting up and running "a medium hose line." On January 31, 2002, when Goodman was pulling a hose by hand, the hose got stuck and he "got jerked down [and] to the left real severely." He felt immediate pain in his back, left leg, neck, and left shoulder. He reported this injury to his employer.

HBD sent Goodman to Dr. Edward Kahn, an orthopedic surgeon, for treatment. Goodman also received treatment from Dr. Lisa Bellner, a pain specialist. An MRI revealed a herniated disc in Goodman's neck, causing deformity of the spinal cord and impinging on the nerve root on the left side. Dr. Kahn opined that this herniated disc was the cause of the pain in Goodman's neck, shoulder, and left arm. Goodman was treated conservatively with medication and physical therapy. Dr. Kahn opined that when he examined Goodman on August 27, 2002, Goodman had reached maximum medical improvement with respect to the neck injury. Dr. Kahn restricted Goodman to light duty work with occasional lifting of up to twenty pounds and frequent lifting of up to ten pounds, with no repetitive bending, stooping, or twisting. HBD paid temporary workers' compensation benefits to Goodman for this neck injury arising out of the January 31, 2002, accident.

Goodman filed a complaint for workers' compensation benefits in the Chancery Court for Scott County on April 18, 2002.[1] A hearing was held on October 11, 2005. The trial court issued an order on October 27, 2005, finding that Goodman had been injured within the course and scope of his employment with HBD and that he had sustained permanent partial disability to the extent of sixty-six percent to the body as a whole. The trial court awarded Goodman a lump-sum judgment totaling $102,529.68, which equaled 264 weeks of benefits at a rate of $388.77 per week. In the fifty-two weeks prior to his injury, Goodman had earned $11,651.24. In calculating Goodman's weekly compensation rate, the trial court deducted the twenty-eight weeks during which Goodman was on strike. Had the court included those weeks in the calculation, the weekly compensation rate would have been $149.38.

HBD filed a notice of appeal on November 16, 2005, challenging the trial court's computation of Goodman's average weekly wage and weekly compensation rate. HBD did not appeal the finding that the injury was sustained in the scope and course of employment or the assessment of sixty-six percent permanent partial disability. We accepted review before the case was heard or considered by the Special Workers' Compensation Appeals Panel.

## II. Standard of Review

■ Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (2005); see also Rhodes v. Capital City Ins. Co., 154 S.W.3d 43, 46 (Tenn. 2004); Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 825 (Tenn.2003). Conclusions of law are subject to de novo review without any presumption of correctness. Rhodes, 154 S.W.3d at 46; Perrin, 120 S.W.3d at 826.

1. Suit was also filed against Sue Ann Head, Director of the Division of Workers' Compensation, Tennessee Department of Labor and Workforce Development, Second Injury Fund. Sue Ann Head and the Second Injury Fund were dismissed from the case in chancery court and are not party to this appeal.

## III. Analysis

### A. Application of Hartley v. Liberty Mut. Ins. Co.

 The only issue on appeal is whether the trial court erred in excluding the twenty-eight weeks during which Goodman was out on strike when calculating his average weekly wage. HBD relies on *Hartley v. Liberty Mut. Ins. Co.*, 197 Tenn. 504, 276 S.W.2d 1 (1954), to support its argument that time spent away from work due to a strike is a voluntary absence and should not be excluded in calculating the weekly wage. Goodman argues in response that *Hartley* is no longer good law, or, in the alternative, *Hartley* does not apply to the facts of this case. Specifically, Goodman argues that *Hartley* is more than half a century old, "has never been followed, in Tennessee or anywhere else," fails to deal with the impact of federal labor law on the issue at hand, and is "an anomalous relic of a prior age that should be given a merciful burial, at least insofar as the issue in this case is concerned." We agree with HBD that *Hartley* controls the outcome of this case, and, therefore, the twenty-eight weeks during which Goodman participated in the strike are to be included when calculating his average weekly wage.

When calculating the weekly compensation rate, a trial court must first determine the employee's average weekly wage. An employee's average weekly wage is defined by statute:

"Average weekly wages" means the earnings of the injured employee in the employment in which the injured employee was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52); but if the injured employee lost more than seven (7) days during the period when the injured employee did not work, although not in the same week, then the earnings for the remainder of the fifty-two (52) weeks shall be divided by the number of weeks remaining after the time so lost has been deducted[.]

Tenn.Code Ann. § 50–6–102(3)(A) (2005). The compensation rate is two thirds of that average weekly wage. Tenn.Code Ann. § 50–6–102(15)(A)(viii) (2005).

Deducting days not worked from the calculation of the average weekly wage benefits the employee because the wages for the fifty-two-week period will be divided by a smaller number of days worked, resulting in a higher average weekly wage. Goodman earned $11,651.24 in the fifty-two weeks prior to his injury. If we include the weeks spent on strike, Goodman's average weekly wage would equal $224.06, making the weekly rate of compensation $149.38. However, the trial court excluded the twenty-eight weeks spent on strike and awarded Goodman benefits at $388.77 per week.[2]

 The determination of whether days an employee does not work should be deducted from the computation of the average weekly wage is dependent upon the facts and circumstances of each case. *Cantrell v. Carrier Corp.*, 193 S.W.3d 467, 472 (Tenn.2006). In making this determination, we ask whether the employee lost time from work due to "the employee's voluntary act, or ... the act and choice of the employer for [the employer's] benefit and convenience." *Bryant v. McAllister*, 202 Tenn. 654, 308 S.W.2d 412, 414–15 (1957). Voluntary absences from work are not deducted from the fifty-two week peri-

---

2. It is unclear how the trial court arrived at this figure. If the twenty-eight weeks are excluded, the income of $11,651.24 is divided by 24 weeks, equaling $485.47, two-thirds of which is $323.65.

od. *Id.; see also Hartley*, 276 S.W.2d at 3. By contrast, days not worked by an employee must be deducted from the fifty-two week period if the inability to work is the result of "sickness, disability, or some other fortuitous circumstance." *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 210 (Tenn. 1983). Examples of "fortuitous circumstances" include the closing of a plant for repairs or a reduction of work due to an unforeseen shortage of material or a lack of orders. *See Cantrell*, 193 S.W.3d at 472 (citing *Hartley*, 276 S.W.2d at 4; *Bryant*, 308 S.W.2d at 413–14).

In *Hartley*, this Court addressed the exact question we are faced with today: should the time the employee spent on strike against the employer be excluded when calculating an employee's average weekly wage? 276 S.W.2d at 2–3. The employee in *Hartley* had taken part in a sixteen-week strike against his employer. *Id.* at 2. Of those sixteen weeks, the plant was closed for eight weeks for repairs. *Id.* After returning to work, the employee was injured within the course and scope of his employment. *Id.* When calculating the employee's average weekly wage, the trial court deducted eight weeks, representing the eight weeks during which the plant was closed, but included the other eight weeks during which the employee was on strike. *Id.* We affirmed, holding that the trial court correctly deducted the eight weeks for the plant closure and that the period for the strike could not be deducted because the employee's "total earnings for the year were reduced by his own voluntary act." *Id.* at 3.

The average weekly wage of an employee should not, and is not, decreased for reasons over which he has no control, such as closing a plant for repairs[,] . . . occasional suspension of operations due to bad weather, unforseen shortage of material, lack of orders, lack of cars, slack season, etc. It is observed that all of the foregoing are occasions and conditions resulting in the cessation of operations by the employer, and should not be considered in determine the average weekly wage of an injured employee. But a strike, in which the employee voluntarily participates, does not fall within the same category.

*Id.*

Goodman acknowledges that "purely voluntary" absences from work should be included in the employee's average weekly wage calculation. However, he argues that his absence for work was not voluntary, and, therefore, *Hartley* should not apply. Goodman asserts that he was required to join the union and that, as a member of the union, he was required to participate in the strike. This assertion is incorrect. First, Tennessee Code Annotated sections 50–1–201 through 204 prohibit any requirement that an individual join or not join a union and makes a violation thereof a criminal offense. Thus, by law, Goodman could not be required to join the union as a condition to his continued employment with HBD. Additionally, Goodman acknowledged at trial that, during the strike, some of the employees chose to cross the picket line and continue working, and HBD had work available to him. Therefore, while Goodman might have felt pressured to participate in the strike, his participation was not required and was in fact voluntary.

In this case, the trial court declined to follow *Hartley*, not because it did not apply but because the court found it unfair: "the Court certainly does not wish to diminish what little this man will get for this injury. Workmans' [sic] comp pays little enough as it is, contrary to what our government thinks. The Court will hold against this [Hartley] rule in every way possible." Goodman agrees that *Hartley*

should be reversed as it is outdated, unfair, and "has never been followed, in Tennessee or anywhere else." We are unpersuaded by Goodman's arguments and find no reason to depart from the long-standing precedent established in *Hartley*.

Since *Hartley*, we have not specifically revisited the issue of whether absence from work due to a strike is to be included in calculating the average weekly wage. However, *Hartley* has been cited with approval several times, particularly when drawing the distinction between voluntary and involuntary absences from work. *See, e.g., Cantrell*, 193 S.W.3d at 472; *Bryant*, 308 S.W.2d at 414–15. Whether the decision in *Hartley* has been followed in other jurisdictions is not persuasive, given the statutory nature of workers' compensation law.

Not only have we chosen not to overrule the decision in *Hartley*, but the Legislature has also expressed its tacit acceptance of the decision, in that it has chosen not to overrule it by statute.

> The legislature is presumed to know the interpretation which courts make of its enactments; the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction, especially where the law is amended in other particulars, or where the statute is reenacted without change in the part construed.

*Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn.1977) (citations omitted); *see also Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005) (holding that the legislature is presumed to know the state of the law).

Because there is no valid reason to overrule *Hartley*, we apply the rule from that case and hold that the twenty-eight weeks during which Goodman was on strike should be included when calculating his average weekly wage. As such, his weekly benefit amount is $149.38, not the $388.77 awarded by the trial court.

### B. Calculating benefits under section 50–6–102(3)(B)

■ In the alternative, Goodman argues that his benefits should be calculated using the provisions of Tennessee Code Annotated section 50–6–102(3)(B) because his period of employment with HBD was less than fifty-two weeks due to the strike. Tennessee Code Annotated section 50–6–102(3)(B) provides:

> Where the employment prior to the injury extended over a period of less than fifty-two (52) weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, that results just and fair to both parties will thereby be obtained....

By its very terms, this section only applies when an employee's "employment prior to the injury extends over a period of less than fifty-two ... weeks." *Id.*

Essentially, Goodman argues that the twenty-eight weeks he spent on strike severed his prior employment relationship with HBD, and the time after the strike was a new period of employment. However, Goodman had been employed by HBD for many years prior to the strike, and he maintained a continuous employment relationship with HBD notwithstanding the strike. He then returned to work for HBD following the strike, evidencing an ongoing employment relationship despite the period of inactivity. Therefore, section 50–6–102(3)(B) does not apply.

The Workers' Compensation laws do not permit an employee to choose the average weekly wage calculation that yields the highest result. The employee must follow

the sequence outlined in Tennessee Code Annotated section 50–6–102(3). If the employee is employed for fifty-two weeks prior to the injury, the employee must use subsection (A). If the employee was employed for less than fifty-two weeks prior to the injury, the employee must use subsection (B). Here, Goodman was employed by HBD for the full fifty-two weeks prior to his injury. Therefore, subsection (A) applies, and his income earned during those fifty-two weeks is divided by fifty-two to arrive at his average weekly wage.

### C. Does federal labor law preempt Hartley?

 Under federal law, employees have the right to form or join labor organizations as well as strike against their employer. *See* 29 U.S.C. §§ 157, 158. The National Labor Relations Act provides that "[i]t shall be an unfair labor practice for an employer . . . (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [29 U.S.C. § 157]" and "[i]t shall be an unfair labor practice for an employer . . . (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a).

These sections of the Federal law only grant employees the right to form a union if they so desire. Although federal law grants employees the right to form a union, we decline to interpret that right to extend as far as requiring days lost while on strike to be excluded from the average weekly wage calculation.

### IV. Conclusion

In sum, we reaffirm our prior decision in *Hartley* and hold that the twenty-eight weeks that Goodman spent on strike are to be included when calculating his average weekly wage. HBD does not appeal the trial court's finding of sixty-six percent permanent partial disability. Therefore, we affirm the trial court's award of 264 weeks of benefits, payable as one lump sum, but at a weekly compensation rate of $149.38 instead of $388.77.

Costs of this appeal are taxed to Phillip Goodman, and his surety, for which execution may issue if necessary.