**FILED**

**October 16, 2014**

**TN COURT OF WORKERS' COMPENSATION CLAIMS**

**Time: 9:05 AM**



## COURT OF WORKERS' COMPENSATION CLAIMS
### DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Luciano Gonzales

EMPLOYER: ABC Professional Tree Services

INSURANCE CARRIER: American Zurich
Insurance Co.

DOCKET #: 2014-06-0015
STATE FILE #: 57318/2014
DATE OF INJURY: July 1, 2014

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Luciano Gonzales (Employee). Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds as follows:

On August 26, 2014, a Request for Expedited Hearing was filed with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, on behalf of Employee pursuant to Tennessee Code Annotated section 50-6-239 to determine if the provision of temporary disability and/or medical benefits is appropriate.

The Court conducted a telephonic hearing on October 8, 2014. Employee participated with his Counsel, Landon Lackey. ABC Professional Tree Services (Employer) and American Zurich Insurance Company (Carrier) participated through their Counsel, Tamara Gauldin. Anthony Kelley testified on behalf of the Employee. Rick Bentley testified on behalf of the Employer. Considering the positions of the parties, the applicable law and all of the evidence submitted, the Court hereby finds that Employee is not entitled to past medical expenses, future medical benefits, and temporary total disability (TTD) benefits.

### ANALYSIS

#### Issues

1. *Whether Employer has adequate grounds to deny Employee's claim based on the willful misconduct affirmative defense.*

1

*2. If not, whether Employer is obligated to pay for any past medical expenses, as well as additional medical care as recommended by a physician, and any past or current TTD benefits.*

## Evidence Submitted

Employee filed a Petition for Benefit Determination (PBD) on August 26, 2014 with attachments. Contemporaneously with the issuance of the Dispute Certification Notice, Employee filed a Request for Expedited Hearing on August 29, 2014. Attachments to the PBD not admitted into evidence were added to the technical record but were not taken into consideration by the Court as evidence[1].

The Court has received and considered the following documents submitted by the parties:

**Exhibit 1:** Employer's Position Statement, September 19, 2014; and,
**Exhibit 2:** Employee's Position Statement, September 19, 2014.[2]

The Court received and considered as evidence the following documents:

**Exhibit 3:** Form C-41, Wage statement.
**Exhibit 4:** Climber Trimmer Proficiency Guidelines; and,
**Exhibit 5:** Climber Trimmer Qualification Exam.

## History of Claim

The parties stipulated that the Date of Injury is July 1, 2014 and that Employer had actual notice of the injury. As a result of the accident, Employee broke his leg, was hospitalized for 11 days, and required follow-up treatments for the injury.[3] The parties agreed that Employee's compensation rate is $416.24.

Employee is 27 years old and resides in Oak Grove, Kentucky. At the time of his injury, Employee had been employed by Employer for almost two years as a "climber trimmer." He acknowledged receiving training as to the safety rules required for this position. Specifically, he

---

1 Employee attached the following: Request for Expedited Hearing; Forms C-20 (First Report of Injury) and C-23 (Notice of Denial); position statements from the parties; Declaration of Luciano Gonzales; and emails exchanged between the parties. Employer's position statement included two attachments, the Climber Trimmer Proficiency Guidelines and Climber Trimmer Qualification Exam. The Guidelines and Exam were subsequently admitted into evidence. However, the forms, Employee's declaration and the emails were neither admitted into evidence nor were considered by the Court in making its Order.

2 The position statements were marked as exhibits but were considered as argument rather than evidence.

3 Employee has not submitted medical records. Employee's Counsel stated they have made efforts to obtain the records, but because they must use a third-party vendor, the process has been delayed. Nonetheless Employee's Counsel stated that it was his belief that neither causation nor the provision of reasonable and necessary medical treatments were before the Court at this time. Employer's Counsel responded that she could not speak to the extent of Employee's injury since she had not seen the records, but did not disagree with Employee's Counsel regarding the issues presently before the Court.

admitted to reviewing and initialing the "Climber Proficiency Guidelines" (Ex. 4) and successfully completing the "Climber Trimmer Qualification Exam" (Ex. 5) in March and April of 2013.

Employee testified that on the date of injury, he was under the supervision of a foreman named, "Luis"[4], who had worked in that role for two weeks or less. Luis could not speak English. The remainder of the crew could not speak Spanish. On this particular day, the tree to which they were assigned could have been trimmed using a hydraulic lift bucket. Employee said the hydraulic was not working, "so they had me go and climb it." (Recorded transcript, 16:07) Employee said:

> As I was going up to trim it, I was going to go all the way up and tie-in, he [Luis] was rushing me, telling me in Spanish, "Ándale, ándale, corte rápido," which means, "Cut really fast." Cut it, like, as I was going up. So I did what he said."

(16:35) Although Employee's primary language is English, he knew enough Spanish to have understood that Luis wanted him to hurry. As he was climbing and cutting, Employee accidentally severed his lanyard and fell to the ground, suffering a fractured leg.

Employee explained the normal climbing procedure. "Tying-in" means anchoring one's self to the tree from the top or main trunk with a climbing line. On the date of the injury, Employee was using only a safety belt/harness that hooks into a lanyard, which goes around the tree and moved with him as he ascended the tree. He had been provided pole spikes to use to climb the tree.

He explained that Luis was causing him to rush the job. Employee testified that, "I know the rules." (19:00) He explained that employees are to tie-in to the climbing rope first before they cut. They are not to cut while climbing upward. Employee acknowledged that he had never had an accident before during his employment with Employer. (21:16) He said, "I always tie-in because, you know, I'm scared of falling. I'm not trying to hurt myself," (19:11), and, "I'm not suicidal." (21:19) Employee was terminated three days after the accident for his failure to follow safety rules.

On cross-examination, Employee testified that he knows very little Spanish, but that Luis never said anything other than the three words mentioned above in Spanish. Employee stated, "I know to go in and tie-in, but I was just listening to what my foreman was saying." (28:50) He testified that he knew he was supposed to tie-in first, because he had been trained to tie-in. (29:28) He learned that while earning his Employer-sponsored certification as a tree trimmer. Employee denied having any awareness that Employer has a zero-tolerance policy for safety-rule violations, and said he was listening to what his foreman was telling him to do. He is a "certified climber. I know what I am doing." (34:53) Employee stated, "If he had not rushed me, I could've did things differently," and that he would have tied-in. (39:14)

On redirect, Employee testified that the safety guidelines were brought up "not often." (40:02) He said the foreman's role is to plan and lead how a job will be completed with safety in

---

4 Employee testified that he believed the supervisor/foreman's surname is Ramirez. Exhibit 1, Employer's Position Statement, identifies him as Luis Miranda. Employer's witness, Rick Bentley, said he did not know the supervisor/foreman's surname, but believed it to be Ramirez as well.

3

mind, and that it is important to listen to the foreman, or that "the company will discipline you." (41:44) Employee stated, "I did what he said and I had an accident." (42:55)

Employee's former co-worker, Anthony Kelly, testified on his behalf. Mr. Kelly, who is a certified truck driver and not a tree trimmer, stated that he was one of three workers present on the day of the injury. He recalled Luis, whom he said cannot speak English, saying, "Ándale" to Employee prior to his fall (53:00) Mr. Kelly said the foreman's role is to provide safety information before they begin a job, and that employees would be disciplined if they did not listen to the foreman.

On cross-examination, Mr. Kelly said he had been terminated, for reasons unrelated to this matter. He said that he actually saw Employee's fall, which was caused by Employee "trying to move faster than he could." (58:07)

Employer's only witness was Rick Bentley, Employer's Safety Director. He testified that he is responsible for safety and training for the entire company. He said that employees are trained in stages. At the end of every stage they are tested and must be "proficient" to move on to the next stage. Training to be a climber lasts anywhere from sixty (60) days to six (6) months, followed by a written exam. A passing score of the exam is eighty percent (80%). Incorrect answers are reviewed and discussed.

Mr. Bentley testified that OSHA regulations require tying-in any time a trimmer is higher than four feet off the ground, but that Employer has a rule that trimmers be tied-in anytime they leave the ground until they return to the ground. (1:02:50) He opined that Employee's use of only the safety lanyard was insufficient, because it is a secondary safety measure. Even when the safety lanyard is used properly, the body can go limp and the trimmer can still fall. Before trimming, it is mandatory to tie-in with a climbing line or "life line." There are two tie-ins, the climbing line and the safety lanyard.

The following questions were directed to Mr. Bentley on direct examination:

Q. Have you had instances where employees have ascended or cut limbs and only used a safety lanyard?
A. In any situation we've had in the past where anybody violated a life-saving rule that employee is terminated.
Q. And you have in fact in the past terminated people for violating this safety rule?
A. Yes, for violating life-saving rules, that's correct. (1:06:57)

Mr. Bentley testified further that there is no exception to the tie-in rule and employees will be terminated if the life-saving rule is violated.. He said that nothing trumps Employer's safety rules. He stated that all employees are trained in the "ABCs of Life,"[5] which explain the discipline policy regarding safety rule violations. Employees must be able to recite the "ABCs of Life" before they are allowed to work in the field.

_____

5 This document was not introduced into evidence.

4

On cross-examination, Mr. Bentley testified that he works from the home office in Texas, but that much of his time is spent inspecting crews all over the country for Employer. He was neither present when Employee's accident occurred, nor could he recall if he ever met Employee. He said Employee made a choice not to tie in first. (1:21:21) He said all employees are given "stop work" authority whenever they feel someone's safety is in jeopardy (1:26:20), and that employees "quite frequently" invoke it (1:27:12).

On redirect, Mr. Bentley said it takes approximately 30 seconds to tie-in with the climbing rope.

## Employee's Contentions

Employee contends that he sustained an injury arising primarily out of and in the course and scope of his employment. Employee avers that Employer has not satisfied its burden of proof regarding willful misconduct, because it has not shown that there is strict adherence to safety rules on worksites and Employee had a valid excuse for violating the safety rule. Employee argues that his supervisor was instructing him to hurry the pace of his work, thereby implicitly directing him to disregard safety rules. Employer's conflicting messages led to Employee's injury. Therefore Employer should be responsible for: 1) all past and future medical expenses stemming from the injury; 2) 14 weeks of past TTD benefits totaling $5,820.50, plus a 25% penalty; and future medical and disability benefits until Employee reaches MMI.

## Employer's Contentions

Employer asserts that Employee engaged in willful misconduct, because as a certified tree trimmer he was fully aware of Employer's safety rule – the 100% tie-in policy. Employee received training and successfully passed the exam. The rule cannot be classified as "ordinary" but rather is a "life-saving rule," which Employee willfully violated. Employee's assertion that he was merely obeying his supervisor is an attempt to divert the responsibility to someone else. Even if Employee's supervisor did tell him to hurry that does not necessarily mean that the supervisor intended for Employee to forego tying-in.

Employer additionally questions whether case law defining willful misconduct still applies, as it interpreted the statute prior to its 2013 amendments. Previous versions of the statute called for a liberal construction in favor of employees, which does not apply to employees sustaining injuries on or after July 1, 2014.

Employer further asserted that since Employee has not submitted any medical records, he has not satisfied his burden of proof regarding entitlement to past or future medical benefits or TTD benefits. Employer contends that there is no evidence indicating whether Employee has been able to work or has worked since the date or injury.

## Findings of Fact and Conclusions of Law

*Standard Applied*

5

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Employee must show that the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13)(2014). In the present case, there is no dispute that Employee's injury arose primarily out of and in the course and scope of his employment.

*Factual Findings*

Employee was injured at work while trimming a tree on July 1, 2014. Employee was ascending the tree wearing a safety harness and lanyard, but he did not tie-in to a climbing rope. Employee's supervisor's primary language is Spanish. Employee's supervisor was telling him, in Spanish, to hurry as he was climbing the tree. Employee was cutting a branch as he ascended and accidentally cut the lanyard, causing him to fall.

Employee had been adequately trained in all safety rules, including the necessity to tie-in at all times. Employer has a 100% tie-in policy. Disregard of the rule is grounds for termination. Employees may stop work if they believe they are being placed in an unsafe situation. Employees may be disciplined if they fail to follow a supervisor's orders. Employee chose to disregard the tie-in policy, resulting in the accident and injury. Employee has submitted no medical proof regarding his injury.

*Application of Law to Facts*

*Employer has satisfied its burden to deny Employee's claim based on the willful misconduct affirmative defense.*

Tennessee Code Annotated section 50-6-110(a) provides that:

No compensation shall be allowed for an injury or death due to:
    (1) The employee's willful misconduct;
    (2) The employee's intentional self-inflicted injury;
    (3) The employee's intoxication or illegal drug usage;
    (4) The employee's willful failure or refusal to use a safety device;.....

Tenn. Code Ann. § 50-6-110(a)(1)-(4)(2014). Employer relies on subparts (1) and (4) in defense of this claim. As such, "If the employer defends on the ground that the injury arose in any or all of the ways stated in subsection (a), the burden of proof shall be on the employer to establish the defense." Tenn. Code Ann. § 50-6-110(b).

As an initial matter, Employer's counsel argues that caselaw under previous versions of the statute should not be controlling. The Court disagrees. The previous version of Tennessee Code

6

Annotated section 50-6-116 declared the Tennessee Workers' Compensation Act (Act) to be a remedial statute and case law held that any reasonable doubt is to be construed in favor of the employee. *Phillips v. A & H Constr. Co.,* 134 S.W.3d 145, 150 (Tenn. 2004). The current version of the same statute prohibits a remedial or liberal construction and calls for a fair and impartial construction. *See* Tenn. Code Ann. § 50-6-116(2014). However, the Legislature did not amend section 50-6-110(a)(1)-(4) when the Act was the subject of sweeping reform in 2013. In this instance, prior case law is not only persuasive, but also controlling where the prior case decision is not based solely or in pertinent part on the previous version of section 50-6-116. Therefore, in cases where the Supreme Court has addressed an issue not based on the remedial nature or liberal construction of the prior Act, this Court is bound by their analysis.

The controlling case outlining the willful misconduct affirmative defense is *Mitchell v. Fayetteville Public Utilities,* 368 S.W.3d 442 (Tenn. 2012). Importantly, the previous statutory preference for an equitable construction and a remedial application played no role in that case's outcome. Therefore, this Court is bound by its principles. *See Goodman v. HBD Indus.,* 208 S.W.3d 373 (Tenn. 2006)

The Supreme Court in *Mitchell* held that the employer could meet its burden to prove the defenses of willful misconduct and willful failure or refusal to use a safety device without having to show an element of perversity, but reiterated the requirement that it must prove that the employee's conduct was willful. *Mitchell,* 368 S.W.3d at 453. In order to successfully defend a workers' compensation claim on the basis of willful misconduct, willful disobedience of safety rules, or willful failure to use a safety device under Tennessee Code Annotated section 50-6-110(a), the *Mitchell* Court adopted a four-step test: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and, (4) the employee's lack of a valid excuse for violating the rule. *Id.*

In *Mitchell,* the high Court upheld the employer's misconduct defense, holding the employer had met its burden to prove that the employee's misconduct was willful. In that case, a lineman for a utility company was injured while working on electric lines. The injured employee was precluded from recovering benefits, because he was not wearing rubber gloves while working around electricity when he was in a bucket lift. The Court held that the injured employee acted with the requisite knowledge of the safety regulation, thus defeating his claim for benefits. The Court found that an "established policy, clear and unequivocal, was known to the Employee," that he had been fully aware of the danger, and that knew that the rule was enforced consistently by the employer. *Id.* at 455. The Court held that the injured employee did not have a valid excuse for the failure to use a safety appliance or device, which amounted to willfulness and constituted the proximate cause of his injuries. *Id.*

In the present case, Employee clearly had actual knowledge of the 100% tie-in policy as evidenced by his training and test scores in Exhibit 4, page 12, and Exhibit 5, page 6. The Employee's own testimony evidenced a clear understanding of the danger involved in violating the rule. He indicated that he was "scared of falling," and, "I am not trying to hurt myself." He had never had an accident before and was "not suicidal." The uncontroverted proof of the Employer that the rule was strictly enforced on a regular basis establishes "bona fide" enforcement.

7

Therefore, the Court must analyze whether Employee's contention that he was rushed by his foreman is a valid excuse for violating the safety rule of tying-in to the climbing rope before beginning work (trimming tree limbs). In other words, as the *Mitchell* Court phrased it, does the Employee have "a plausible explanation" for his failure to follow the requirement to tie-in to the climbing rope? *Id.* at 452.

Employee insists that pressure from his foreman to work quickly forced him to violate the well-known safety rule. However, there is no proof that the foreman specifically insisted that the safety rule be violated. In fact, the implication from the proof is that the foreman could not communicate such a direct instruction due to a language barrier. Additionally the undisputed proof is that the tie-in process took only 30 seconds to perform. Compliance with most safety rules would involve some loss of speed in exchange for increased safety of operation.

In this case, the established policy is clear. Employee certainly understood the reason for the tie-in policy and appreciated the danger of avoiding that policy. Enforcement of the policy was unchallenged by the Employee. Feeling "rushed" is simply not a plausible explanation for noncompliance. Therefore, Employer has met its burden to prove the last element -- that Employee lacked a valid excuse for violating the rule. Because Employer has successfully raised the willful misconduct affirmative defense, this Court need not reach the issues regarding past medical expenses, additional medical care and any past or current TTD benefits.[6]

### IT IS, THEREFORE, ORDERED THAT:

1) Employee's interlocutory request in this Expedited Hearing for temporary disability benefits and medical benefits is denied at this time on the grounds that Employer has successfully asserted the defense of willful misconduct. This is not a Final Order.

2) This matter is set for Initial Hearing on November 13, 2014 at 9 a.m.

ENTERED this the _16_ day of October, 2014.

Kenneth M. Switzer, Chief Judge
Court of Workers' Compensation Claims

---

6 There was no proof offered on any of these elements at the hearing except for pleadings suggesting Employee's 11-day hospitalization. If the Court were to have denied Employer's defense of willful violation of a safety rule, the only temporary benefit awarded would have been for the period of the hospital stay, less the statutory exemption for the first seven days of disability. See Tenn. Code Ann. § 50-6-205 (2014).

**Initial Hearing:**

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers Compensation. You must dial in at 615-532-9552 or 866-943-0025 toll free at to participate in your scheduled conference.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

**Right to Appeal:**

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __16__ day of October, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|------------|-----------|---------------|
| Landon Lackey, Employee's attorney | | | | | X | Landon@landonlackeylaw.com |
| Tamara Gauldin, Employer's attorney | | | | | X | Tamara.Gauldin@zurichna.com |

Kenneth M. Switzer, Chief Judge
Court of Workers' Compensation Claims

9