**FILED**
**Mar 28, 2019**
**02:51 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| SUSAN SPRAGUE, | ) | **Docket No. 2018-08-1044** |
| **Employee,** | ) | |
| v. | ) | **State File No. 8259-2018** |
| **BARTLETT CITY SCHOOLS,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Amber E. Luttrell** |

## COMPENSATION HEARING ORDER GRANTING BENEFITS

The Court held a Compensation Hearing on February 28, 2019, on Ms. Sprague's compensable workers' compensation claim. The sole legal issue concerned the proper calculation of her average weekly wage and resulting compensation rate applicable to her permanent partial disability award. For the reasons below, the Court holds Ms. Sprague's average weekly wage is $468.34, resulting in a compensation rate of $312.23. Thus, she is awarded permanent partial disability totaling $11,240.28 and future medical benefits.[1]

### History of Claim

*Stipulations*

The stipulated facts are summarized as follows: Ms. Sprague works for Bartlett City Schools as a Special Education Teacher's Assistant. On January 30, 2018, she fell off a ladder and injured her right shoulder. She reported her injury and sought authorized treatment with orthopedist Dr. Mark Harriman, who diagnosed a dislocated shoulder and humerus fracture. Following treatment, Dr. Harriman concluded she reached maximum medical improvement on July 11, 2018, and assigned a permanent impairment rating of

---

[1] The parties participated in post-discovery mediation on February 7; however, due to technical errors, the mediator did not forward the post-discovery Dispute Certification Notice to the parties until the day before trial. At trial, the parties agreed to waive their statutory five-business day period to review and revise the DCN and advised the Court of their corrections. The parties stated that the mediator erroneously included several issues on the DCN and that the only issue is the proper calculation of the average weekly wage and resulting compensation rate. With those corrections, the parties agreed to the DCN.

1

eight percent to the body as a whole. He released Ms. Sprague to full duty with no restrictions, and she returned to work earning the same wages.

Regarding Ms. Sprague's employment, she has worked continuously as a regular full-time employee for Bartlett Schools since July 2014. She was and continues to be paid $16.65 per hour. She is not paid when she does not work except for certain paid school holidays, vacation days, inclement weather days, sick time, and personal days.

Ms. Sprague was not scheduled or paid to work during the ten weeks of summer break when school was not in session. The summer break is an annual event; she was aware there would be an annual summer break when she began her employment in 2014; and she has never been paid during the summer. Before her employment with Bartlett City Schools, she worked in the same position for a different school system that also did not pay her during summer.

Because Ms. Sprague did not work during the ten weeks of summer, she contended her average weekly wage should be divided by forty-two weeks instead of fifty-two, which yields an average weekly wage of $579.84 and a compensation rate of $386.56. Thus, she argued her permanent partial disability award of eight percent totals $13,916.16.

Bartlett Schools contended Ms. Sprague's average weekly wage should be divided by fifty-two weeks, which yields an average weekly wage of $468.34 and a compensation rate of $312.23. Thus, it argued her permanent partial disability award is $11,240.28.

*Trial Testimony*

Ms. Sprague testified she is paid differently than teachers, who are paid an annual salary by contract. She stated both teachers and regular employees are off during summer; however, teachers' salaries are spread throughout fifty-two weeks, while she is only paid over the forty-two weeks of the school year. Ms. Sprague stated she is willing to work during the summer but was never given the opportunity because of the school closure. She also was not given the option to spread her pay over the calendar year.

On cross examination, Ms. Sprague agreed she did not work but was paid on vacation days, sick days, school holidays, and personal days. She acknowledged that she knew the school closed for summer when she accepted the job and that she would not be paid then. Ms. Sprague confirmed she was paid $16.65 per hour and was scheduled for a seven-hour workday on the date of injury. If she did not work a full seven-hour day and did not use leave time, she was not paid for her time off work. Some days, she worked more than seven hours and was paid more. She acknowledged the school never informed her they did not have seven hours of work for her to do, nor was she ever sent home early for lack of work.

Brittany Clark, Human Resources Coordinator, testified for Bartlett City Schools. She explained that teachers are under a contract that requires the payment of salaries over the calendar year. However, staff assistants, like Ms. Sprague, are not required to sign employment contracts. Ms. Clark confirmed that during the forty-two-week school year, Ms. Sprague receives seventy hours of sick leave, two personal days, two inclement weather days, ten vacation days, and ten school holidays.

## Findings of Fact and Conclusions of Law

"At a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2018).

By stipulation of the parties, the Court holds Ms. Sprague sustained a compensable shoulder injury for which she retained an eight-percent permanent impairment to the body as a whole. Further, as this is a compensable claim, the Court holds Ms. Sprague is entitled to reasonably necessary future medical treatment under Tennessee Code Annotated section 50-6-204.

Tennessee Code Annotated section 50-6-207(3)(A) provides Ms. Sprague is entitled to an "original" award of permanent partial disability benefits for her eight percent permanent impairment rating multiplied by 450 weeks or thirty-six weeks. Because she returned to employment at the same or greater wage during her initial compensation period, she is not entitled to additional benefits based on any enhancement factors.

To determine the value of Ms. Sprague's permanent partial disability award, the Court considers the sole issue of her average weekly wage. The parties agreed that Tennessee Code Annotated section 50-6-102(3)(A) governs this case and defines average weekly wage as follows,

> Average weekly wage means the earnings of the injured employee in the employment which the injured employee was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52); but if the injured employee lost more than seven (7) days during the period when the injured employee did not work, . . . then the earnings for the remainder of the fifty-two (52) weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.

Ms. Sprague argued she lost more than seven days of work and pay during the

3

fifty-two weeks preceding her injury, thus the ten weeks of summer should be deducted from her average weekly wage calculation. She contended that the statute does not define lost time. She relied on the Tennessee Supreme Court's analysis of "voluntary" versus "involuntary" absences from work in *Goodman v. HBD Indus.*, 208 S.W.3d 373, 375 (Tenn. 2006), to support her position that she did not miss ten weeks of work due to her "voluntary" decision.

In *Goodman*, the union-member employee went on strike for twenty-eight weeks and had returned to work for less than a month before his injury. The trial court excluded the twenty-eight weeks from the employee's average weekly wage calculation, resulting in a higher compensation rate. On appeal, the Supreme Court included the twenty-eight weeks in the average weekly wage calculation. The Court reasoned,

> [V]oluntary absences from work are not deducted from the fifty-two week period. By contrast, days not worked by an employee must be deducted from the fifty-two week period if the inability to work is the result of "sickness, disability, or some other fortuitous circumstance." Examples of "fortuitous circumstances" include the closing of a plant for repairs, or a reduction of work due to an unforeseen shortage of material or lack of orders.

*Id.* at 378 (internal citations omitted). The Court held the employee in *Goodman* was not required to join the union to work at HBD and was not required to participate in the strike, thus his participation was voluntary. *Id.* Here, Ms. Sprague contended that because she did not voluntarily decline work during summer, those weeks should be deducted from her average weekly wage.

In contrast, Bartlett argued that under Tenn. Code Ann. 50-6-102(3)(A) and *Goodman*, Ms. Sprague's average weekly wage must be divided by fifty-two weeks. It stated that she was continuously employed by Bartlett since July 2014 and her absence, by her own admission, was not due to sickness, disability, or any fortuitous circumstance, but rather the annual summer break, which had occurred every year since she was hired.

Bartlett cited a subsequent decision, *Houston v. MTD Consumer Group, Inc.*, No. W2012-01975-WC-R3-WC, 2013 Tenn. LEXIS 860 (Tenn. Workers' Comp. Panel Oct. 25, 2013). In *Houston*, the trial court excluded weeks the employee was subject to an annual layoff, resulting in a higher compensation rate. MTD made lawn mowers and garden products; it contended it was a "seasonal operation," and it was a known fact that employees were subject to annual layoffs. On appeal, the Panel held the employee's layoff was not a fortuitous circumstance but was a "recognized incident of [the employee's] regular employment and should not be excluded from the computation of the employee's average weekly wage." *Id.* at 7-8 (internal citations omitted). Similarly, here, Bartlett argued that summer break was not fortuitous but instead a recognized incident of

4

Ms. Sprague's regular employment.

Bartlett further cited a somewhat similar case, *Richardson v. Coffee Cnty. Bd. of Educ.*, No. M2006-02371-WC-R3-WC, 2008 Tenn. LEXIS 201 (Tenn. Workers' Comp. Panel Apr. 3, 2008). In *Richardson*, the employee was a cafeteria worker who only worked for thirty-six weeks when school was in session. The employee argued her average weekly wage should have been calculated by dividing by thirty-six weeks instead of fifty-two. The Panel affirmed the trial court's holding that the employee was continuously employed over a full year and her average weekly wage should be calculated based on the calendar year instead of the school year.

Mindful of the foregoing, the Court is not persuaded by Ms. Sprague's argument. First, the Court disagrees with her contention that she did not voluntarily choose to be off during summer breaks. The undisputed proof established Ms. Sprague voluntarily accepted employment as a teacher's aide with Bartlett City Schools knowing that she would not work or receive pay during summer breaks. Second, the Court holds that Ms. Sprague's ten weeks off due to Bartlett's annual summer break was not a "fortuitous circumstance" as contemplated by the courts in the relevant caselaw. Instead, as in *Houston*, this Court holds Ms. Sprague's ten weeks off for summer was a "recognized incident of her regular employment" and should not be excluded from the computation of her average weekly wage.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Sprague's average weekly wage is $468.34, resulting in a compensation rate of $312.23.

2. Ms. Sprague shall recover from Bartlett City Schools a permanent partial disability award of $11,240.28 representing eight-percent impairment to the body as a whole.

3. Ms. Sprague shall receive future medical benefits under the statute with Dr. Harriman.

4. Ms. Sprague's attorney is awarded a twenty-percent attorney's fee.

5. Absent an appeal of this order by either party, the order shall become final thirty days after issuance.

6. Costs of $150.00 are assessed against Bartlett City Schools under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016), to be paid within five days of this order becoming final.

7. Bartlett City Schools shall prepare and file a statistical data form (SD2) within ten business days of the date of this order under Tennessee Code Annotated section 50-6-224.

**ENTERED March 28, 2019.**

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

6

## APPENDIX

Exhibits:

1. First Report of Work Injury
2. Wage Statement
3. Dr. Harriman's C-30A
4. Bartlett City Schools Injury/Accident Report (3 pages)
5. Panel of Physicians
6. Personnel file (collective)
7. Payroll information (2 pages)
8. Time records (collective)
9. Job description
10. Work-pay schedule (collective)
11. Employee handbook
12. Stipulations of the parties

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Scheduling Order
5. Pre-Compensation Hearing Statement
6. Employer's List of Proposed Witnesses and Exhibits
7. Employer's Pre-Trial Brief
8. Employee's Witness and Exhibit List
9. Employee's Pre-Trial Brief
10. Dispute Certification Notice (post-discovery)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on this the 28th day of March, 2019.

| Name | Via Email | Service sent to: |
| --- | --- | --- |
| William B. Ryan, Esq., Employee's Counsel | X | billy@donatilaw.com |
| Chris Crain, Esq., Employer's Counsel | X | ccrain@swlawpllc.com |

Penny Shrum, Clerk of Court
**WC.CourtClerk@tn.gov**

7