

**FILED**

April 20, 2015

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

Time: 10:00 AM



## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

Employee: Jeffrey Scarbrough )      Docket No. 2014-03-0006

) 

Employer: Right Way Recycling, LLC )      State File No. 69072-2014

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 20th day of April, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Chris Beavers** | | | | | X | chriswbeavers@yahoo.com |
| **Joshua A. Wolfe** | | | | | X | joshua.wolfe@leitnerfirm.com |
| **Lisa A. Knott, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov

**FILED**

April 20, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 10:00 AM



## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Employee: Jeffrey Scarbrough ) | Docket No. 2014-03-0006 |
| ) | |
| Employer: Right Way Recycling, LLC ) | State File No. 69072-2014 |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Lisa A. Knott, Judge ) | |

---

Affirmed and Remanded – Filed April 20, 2015

---

## OPINION AFFIRMING AND REMANDING INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION CLAIMS

This interlocutory appeal involves an employee who was injured when he fell as he was climbing down from an excavator/trackhoe. The employer denied the claim, asserting (1) the injury did not arise primarily out of and in the course and scope of the employment, and (2) the injury resulted from the employee's willful misconduct. Following an expedited hearing, the trial court found that the employee's injury arose primarily out of and in the course and scope of the employment, and that the employer failed to establish the defense of willful misconduct. The trial court ordered that the employer provide a panel of physicians and pay for the employee's medical care in accordance with Tennessee Code Annotated section 50-6-204, and that the employer pay past due temporary disability benefits. The employer has appealed. Having carefully reviewed the record, we find that the employee presented sufficient evidence from which the trial court could conclude that the employee is likely to prevail at a hearing on the merits regarding compensability, and we accordingly affirm the decision of the Court of Workers' Compensation Claims.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner, joined.

1

Joshua A. Wolfe, Knoxville, Tennessee, for the employer-appellant, Right Way Recycling, LLC

Chris Beavers, Knoxville, Tennessee, for the employee-appellee, Jeffrey Scarbrough

## Factual and Procedural Background

Jeffrey Scarbrough ("Employee") worked as a laborer for Right Way Recycling, LLC ("Employer"), which is owned by Kumar Roopchan. Employee claims to have suffered an injury by accident arising out of and in the course and scope of his employment on July 23, 2014, when he fell while climbing down from an excavator/trackhoe ("trackhoe") on Employer's premises. Employer denied the claim on two grounds, asserting that Employee's injury did not primarily arise out of and in the course and scope of employment, and that Employee's injuries were due to his willful misconduct. Employee filed a Petition for Benefit Determination with the Division on September 4, 2014, and on January 21, 2015, Employee filed a Request for Expedited Hearing with the Court of Workers' Compensation Claims, which was conducted on February 3, 2015. Four individuals testified in person at the hearing, including Employee; Mr. Roopchan; Employee's supervisor, Francisco Sebastian; and another co-worker, Johnny Munsey. Among other exhibits admitted into evidence at the hearing, the parties admitted the depositions of each of the four individuals who testified in person.

Employee's primary job responsibilities included pulling parts off cars and stripping sheathing from wires. Employer's business opened to the public at 8:00 a.m., and Employee's supervisor, Francisco Sebastian, normally moved heavy equipment located at the front of the business each morning to allow the public access to the business. The heavy equipment included the trackhoe, a bobcat and a forklift. Mr. Roopchan testified that on July 23, 2014, he arrived at the business and advised all of the employees that Mr. Sebastian would be out that morning; that the employees were to open the business as usual; and that he (Mr. Roopchan) would move the equipment from the building to the outside. Employee testified that on the morning of the accident Mr. Roopchan yelled at everyone to "get the blank [referring to profane word] business open," and that the employees started moving other vehicles. Employee testified that Mr. Roopchan did not give any further instructions, and that the other employees were moving the forklift, bobcat and trucks. He explained that he entered the trackhoe to move it, but that he did not know how to start it.

Employee testified that when he attempted to exit the trackhoe, he missed a step and fell to the ground, injuring his head and neck. He testified that he informed Mr. Roopchan that he fell off of the trackhoe and that Mr. Roopchan looked at his head and said, "it's just a scrape; go back to work." Employee testified in his deposition that he told Mr. Roopchan that he "would like to go home because it's really hurting." He

2

testified that Mr. Roopchan said, "do whatever you feel like you need to do," so he clocked out and "went to the house." Employee testified in his deposition that he had a friend take him to UT Medical Center that afternoon where he was admitted for three days. He subsequently received medical care from Dr. Michael Walsh and Dr. Brian Powell. He was kept out of work by the doctor for the period July 24, 2014 until September 24, 2014.

The parties stipulated that Employee had been employed by Employer for approximately two weeks before the July 23, 2014 incident. Employee testified he started operating heavy equipment when he was eighteen years old, but that he had not operated heavy equipment since 2005. Employee testified that he had never moved or attempted to move the trackhoe before July 23, 2014, and that no one had ever told him that he could or could not use the trackhoe. He admitted that he did not need the trackhoe to pull parts or to strip wire. He testified he had never seen anyone other than Mr. Sebastian and Mr. Roopchan operate the trackhoe. He testified he was never instructed not to operate the equipment and that instructions were not posted on any machine or elsewhere. He testified Employer had no documentation whatsoever stating what employees can and cannot do that was posted on any part of the property and that no such information was given to any employee.

Mr. Roopchan testified that he hired Employee as a manual laborer and that the business' training process consisted of new hires being trained by existing employees. He testified that Employee was trained on how to strip wire and pull car parts by hand. He testified Employee did not need to use any heavy equipment to do his work. He testified only two people were trained and authorized to operate the trackhoe, and everyone else was prohibited from doing so for safety and other liability reasons. He testified that he instructed Employee on at least two separate occasions not to operate the heavy equipment and that only Mr. Sebastian and he were authorized to operate the trackhoe. Mr. Roopchan explained that there were other times that he had to move the equipment when Mr. Sebastian was not at the business, and he admitted that the July 23 incident was the first time this had happened since Employee came to work.

While there are stark inconsistencies in the testimony of Employee and Mr. Roopchan, the trial court did not express specific findings with regard to the credibility of these witnesses. The trial court did, however, find that, contrary to Employee's testimony, "Mr. Roopchan and Mr. Sebastian told [Employee] not to operate the trackhoe/crane . . . ."

Following the expedited hearing, the trial court entered an Expedited Hearing Order on March 3, 2015, finding that Employee's injury arose primarily out of and in the course and scope of his employment. The March 3, 2015 order additionally determined that Employer did not establish the willful misconduct defense provided in Tennessee Code Annotated section 50-6-110. On April 6, 2015, the parties filed a Joint Agreed

3

Statement of Evidence ("Agreed Statement of Evidence") that was reviewed and approved by the trial judge.

## Standard of Review

The standard of review applicable in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless "the rights of the party seeking review have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly unwarranted exercise of discretion; or
(E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(2) (2014).

In applying the standard set forth in subparagraph (E) above, courts have construed "substantial and material" evidence to mean "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn. 1993) (*quoting Southern Railway Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). Like other courts applying the standards embodied in section 50-6-217(a)(2), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

Tennessee Code Annotated section 50-6-239(d)(1) establishes a different standard of proof for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, slip op. at 4 (Tenn. Workers' Comp. Appeals Bd. Mar. 27, 2015). "[A]n employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1)." *Id.* at 5.

4

## Analysis

### A. Course and Scope of Employment

Tennessee Code Annotated section 50-6-102(13) (2014) defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment . . . ." Tenn. Code Ann. § 50-6-102(13). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B).

The Tennessee Supreme Court has consistently held that to qualify as a compensable workers' compensation claim, an injury must both "arise out of" and occur "in the course of" employment:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008) (*quoting Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991)).

Employer asserted in the trial court that the definition of injury in the workers' compensation law has changed and, because moving the trackhoe was not part of Employee's job duties, the injury did not arise primarily in the course and scope of his employment. Employee denied in his deposition that he recalled Mr. Roopchan ever telling him that he was not allowed to operate the heavy equipment. Employee also denied in his deposition that Mr. Sebastian or anyone else ever told him that he was not to operate the heavy equipment. The trial court found that Employee knew that Mr. Sebastian and Mr. Roopchan "always moved the trackhoe;" that Mr. Sebastian and Mr. Roopchan "told [Employee] not to operate the trackhoe/crane . . . ;" and that "moving the trackhoe was not one of [Employee's] assigned work duties." However, Employee testified in his deposition that Mr. Roopchan "was hollering, '[g]et the damn place open,' so we just started moving equipment and moving cars, trucks, whatever had to be moved." The Agreed Statement of Evidence notes that Employee testified "he moved the trackhoe because it was blocking the way for customers to enter the facility, so it had to be moved," and that "moving the trackhoe to allow customers to enter the facility would

5

benefit [Employer]." As noted in the trial court's analysis of the willful misconduct defense, the trial court accepted this testimony as justifying Employee's actions in attempting to move the equipment to comply with Mr. Roopchan's instruction to get the business open, finding that Employee "established a valid reason/excuse for attempting to move the trackhoe." The trial court's finding further supports a conclusion that Employee's efforts in attempting to move the trackhoe were within the scope of his employment, since his actions were in response to an instruction from the owner and were intended to further Employer's interests. The trial court concluded that Employee "acted in the course and scope of his employment when he attempted to move the trackhoe . . . ," and we find that the evidence does not preponderate against this determination.

### B. Willful Misconduct

Employer asserts the July 23, 2014 injury is not compensable due to Employee's willful misconduct. Tennessee Code Annotated section 50-6-110(a) (2014) provides in subsection (1) that no compensation shall be allowed for an injury due to the employee's "willful misconduct." The statute conditions the preclusion of compensation to circumstances where the injury was "due to" the willful misconduct. In this context, "due to" means the proximate cause of the injury and not merely a remote or contributing cause. *See Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 449 (Tenn. 2012).

If an employer defends on the grounds that an injury arose from willful misconduct, the burden of proof is on the employer to establish the defense. Tenn. Code Ann. § 50-6-110(b). *Mitchell* is the controlling case outlining the willful misconduct defense. At the time the Tennessee Supreme Court decided *Mitchell*, Tennessee Code Annotated section 50-6-116 (2012) declared the Workers' Compensation Act to be "a remedial statute, which shall be given an equitable construction by the courts, to the end that the objects and purposes of [the Act] may be realized and attained." Tenn. Code Ann. § 50-6-116. This previous statutory preference for an equitable construction and a remedial application played no role in the outcome of *Mitchell*; accordingly, we are bound by its principles. *See generally Goodman v. HBD Indus.*, 208 S.W.3d 373, 378-79 (Tenn. 2006).

In *Mitchell,* the Court held that for an employer to meet its statutory burden to prove the defenses of willful misconduct and willful failure or refusal to use a safety device, an employer must prove the following four elements:

(1) the employee's actual, as opposed to constructive, notice of the rule;
(2) the employee's understanding of the danger involved in violating the rule;
(3) the employer's bona fide enforcement of the rule; and
(4) the employee's lack of a valid excuse for violating the rule.

6

*Mitchell,* 368 S.W.3d at 453.

In the instant case, the trial court found that Mr. Roopchan's and Mr. Sebastian's statements to Employee not to operate the trackhoe on one or two occasions "did not rise to the level of having a safety rule or policy in place;" that Employee "could not have appreciated the danger involved in moving the trackhoe;" that even if there was an applicable safety rule in place, Employer "did not establish that it exercised bona fide enforcement of the rule;" and that Employee "established a valid reason/excuse for attempting to move the trackhoe."

One of the several factual findings identified by the trial court included a finding that "Mr. Roopchan and Mr. Sebastian told [Employee] not to operate the trackhoe/crane but their actions did not establish a specific safety rule in place that was enforced." The trial court found that "telling an employee not to do something on one or two occasions does not rise to the level of having a safety rule or policy in place." Employer admitted there were no safety rules posted on the premises or on the trackhoe. Employee testified that he was not given an employee handbook explaining what he could and could not do as an employee. He testified that Employer had no documentation advising what employees could and could not do and that instructions were not posted on any machine or elsewhere. While we decline to address whether oral statements "on one or two occasions" can establish a safety rule or policy or the requirements for oral statements to establish a safety rule or policy, we find that the evidence does not preponderate against the trial court's finding that Employer did not establish a safety rule or policy in place prohibiting Employee from operating the trackhoe. Without a rule or policy in place, Employer cannot establish the first element necessary for a successful willful misconduct defense, which is the employee's actual, as opposed to constructive, notice of the rule.

The trial court also found that Employer did not establish that it "exercised bona fide enforcement of the rule because Mr. Roopchan did not discipline [Employee] when he attempted to move the backhoe." While it is unclear from the proof whether Employee voluntarily left his employment or was terminated, there is no proof indicating Employee was in any manner disciplined as a result of his efforts to move the trackhoe. The Agreed Statement of Evidence states that "Mr. Roopchan did not take any disciplinary action against [Employee] for the present incident." Additionally, it states that "[n]o one ever attempted to operate any of the equipment beside[s] Mr. Roopchan and Mr. Sebastian; thus, Mr. Roopchan did not have to discipline anyone else in the past for a similar infraction."[1] There is no evidence of a bona fide enforcement of the purported rule, which, by itself, negates the defense of willful misconduct.

---

[1] We recognize the conflicting evidence in the Agreed Statement of Evidence between the statement attributed to Mr. Roopchan that "[n]o one ever attempted to operate any of the equipment beside[s] Mr. Roopchan and Mr. Sebastian," and the statement attributed to Employee that when Mr. Roopchan yelled at everyone to get the business open "the other employees were moving the forklift, bobcat and trucks." The trial court did not expressly address the credibility of these witnesses, nor did the trial court expressly resolve the conflict in these statements.

Finally, as regards Employer's willful misconduct defense, the trial court found that Employee established a valid excuse for his actions in attempting to move the trackhoe. Employee testified that he attempted to move the trackhoe because it had to be moved in order for the business to open, and that Mr. Roopchan "yelled at everyone" to get the business open. The trial court accepted this testimony as justifying Employee's actions in attempting to move the equipment to comply with Mr. Roopchan's instruction to get the business open. Although the evidence did not establish a safety rule in place that Employee had actual notice of, the evidence established that Employee had a valid reason for attempting to move the trackhoe.

## Conclusion

For the foregoing reasons, we find that Employee came forward with sufficient evidence from which the trial court could conclude that Employee is likely to prevail at a hearing on the merits regarding whether his injury arose out of and in the course and scope of his employment. Further, we conclude that the evidence does not preponderate against the trial court's finding that Employer failed to establish the defense of willful misconduct. Additionally, we hold that the trial court's findings do not violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(2). Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board

8